# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 22, 2018

Plaintiff-Appellee,

v

No. 334963
Macomb Circuit Court
LC No. 2015-002731-FC

GARY ALLEN DENNIS,

Defendant-Appellant.

Before: JANSEN, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals his convictions of armed robbery, MCL 750.529, possession of a firearm during the commission of a felony (felony-firearm) (second offense), MCL 750.227b, possession of a firearm by a person convicted of a felony (felon in possession of a firearm), MCL 750.224f, possession of ammunition by a person convicted of a felony (felon in possession of ammunition), MCL 750.224f(6), and carrying a concealed weapon (CCW), MCL 750.227. The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 25 to 40 years' imprisonment for his armed robbery conviction, 60 months' imprisonment for his felony-firearm conviction, 7 to 40 years' imprisonment for his felon in possession of a firearm conviction, 7 to 40 years' imprisonment for the felon in possession of ammunition conviction, and 7 to 40 years for the CCW conviction. For the reasons set forth below, we affirm.[1]

## I. BASIC FACTS

This case arises out of an armed robbery of a Sherwin Williams Paint store on July 13, 2015. At approximately 7:00 a.m. on that day, the victim and another employee had just opened the store when defendant entered. Defendant initially asked the victim some questions about the painting products before telling him to prepare two gallons of paint. As the victim began processing the order, defendant pulled out a small gun and pointed it at the victim's chest. Defendant then demanded that the victim give him his "phone and [his] wallet and not fuck

---

[1] The court ordered that defendant's convictions for armed robbery, felon in possession of firearm, and CCW should run concurrently, while his conviction for felony-firearm should run consecutively with the other convictions.

round [sic] or [defendant] would shoot" him. The victim testified that during the robbery, he was focused on defendant's "face, [and] on his clothes."[2] Defendant removed all the cash from the two registers, dumped most of the change into a bag, threw the registers to the floor, and walked out. The other employee, who was at the back of the store during the robbery, called 911 when he realized what had happened, and gave the victim the phone for him to give the police a description of the person that had robbed the store. When the police arrived at the store a few minutes later, the victim gave them a written statement of what had occurred, including a description of the robber. Defendant was arrested after the incident. In his backpack, the police recovered a dark-colored hoodie, a blue T-shirt, dark-colored shorts, a stack of money, several rolled and loose coins, a small handgun, and the victim's wallet. Although the police later returned to the store to inform the victim that they had arrested the perpetrator and to return his wallet, the police never asked the victim to identify the person that they had in custody.

Two week after the robbery, a preliminary examination was held, and the victim was subpoenaed to attend the hearing. As the victim waited in the hallway for the proceeding to begin, he observed deputies bring in 8 to 10 handcuffed prisoners, and immediately recognized defendant as the person that had robbed him. All of the prisoners were younger and black, with the exception of defendant, who was a 51-year-old white male. The victim informed the prosecutor that he had just seen defendant and identified him as being one of the prisoners brought in by the deputies. Shortly thereafter, the prosecutor asked the victim to go into the courtroom, and once inside the courtroom, the victim, again, noticed the same prisoners sitting in the jury box. He again recognized defendant as one of the inmates sitting in the jury box. During the preliminary examination hearing, the victim identified defendant as the person that robbed him.

## II. ANALYSIS

### A. UNDULY SUGGESTIVE IDENTIFICATION

On appeal, defendant first argues that the victim's identification was unduly suggestive because he had witnessed defendant in prisoner garb prior to the preliminary examination, and that the prosecution failed to prove by clear and convincing evidence that the victim's identification of defendant had a substantial independent basis. We disagree.[3]

A defendant is denied due process if a procedure used to identify him as the perpetrator of an offense is unnecessarily suggestive or conducive to irreparable misidentification. *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). "In order to challenge an identification on the basis of lack of due process, 'a defendant must show that the pretrial

---

[2] The victim testified that, as part of his employment, he had recently received special training on how to handle a robbery, which included instructions to focus on the robber's description.

[3] A "trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous." *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id.*

identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification.' " *Id*. (citation omitted). "Simply because an identification procedure is suggestive does not mean it is necessarily constitutionally defective." *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998). "If the trial court finds the procedure was impermissibly suggestive, evidence concerning the identification is inadmissible at trial unless an independent basis for in-court identification can be established 'that is untainted by the suggestive pretrial procedure.' " *Williams*, 244 Mich App at 542-543 (citation omitted).

The following factors are considered to determine whether an independent basis exists for the admission of an in-court identification:

> (1) prior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including the length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any prelineup identification lineup of another person as the perpetrator; (7) the nature if the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant. [*People v Davis*, 241 Mich App 697, 702-703; 617 NW2d 381 (2000).]

As an initial matter, we agree that the preliminary examination was a suggestive atmosphere in that the victim was escorted into the court with other prisoners and placed in the courtroom in prison garb. *Colon*, 233 Mich App at 305. However, in applying the totality of the circumstances, we conclude that the victim's in-court identification of defendant was not unduly suggestive as there was sufficient independent basis for the identification.

There is record evidence that the victim had never seen defendant prior to the robbery. However, there was testimony showing that the victim had ample opportunity to observed defendant before and during the robbery. Before defendant robbed the victim, he spoke to the victim and placed an order for paints. The victim testified that he observed defendant for five minutes at the paint store. Moreover, the victim, who testified that he received training that taught him to pay attention to details of a robber's appearance, stated that he paid close attention to defendant's face and clothing during the robbery. This observation took place in a paint store with all the lights on, and the victim was face-to-face with defendant, with only a 3-foot counter between them. Defendant's face was not covered, and the victim described defendant as being a Caucasian male, between 50 and 60 years old, with gray or silver hair with a goatee, and wearing a black or dark blue hoodie with gray shorts, white tennis shoes, a T-shirt, and possessing a handgun. In the victim's written statement shortly after the incident, he described defendant as "an older man . . . with silver and black facial hair [and] silver hair," approximately five-foot 10 inches and 180 pounds.

Although defense counsel rigorously cross-examined the victim regarding his identification of defendant, the victim remained adamant that he was absolutely sure that defendant was the person who committed the robbery. Indeed, a significant amount of time have not elapsed between the robbery and the preliminary examination, where was only a 17-day interval between the robbery and the preliminary examination defendant. CF *Colon*, 233 Mich

App at 305 (holding that a less-than-two-week interval was a "relatively short span of time that does not reduce the reliability of the identification") (quotation marks and citation omitted). Finally, although the victim stated that he was scared during the robbery, nothing in the record indicates that his perception was affected by that emotion.

Accordingly, there was a sufficiently independent basis for the victim's identification of defendant.

## B. MISTRIAL

Defendant argues that the trial court abused its discretion by failing to grant his motion for a mistrial where Patrol Officer Paul Baranski testified, contrary to the parties' stipulation, that defendant had an outstanding warrant at the time he was arrested for the armed robbery. We disagree.[4]

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citation omitted). Further, "A mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992).

Before the commencement of trial, defendant stipulated that he was previously convicted of a felony and not eligible to own or possess a firearm on the date of the offense. Prior to Officer Baranski's testimony, the parties and the trial court agreed that the officer should not testify that defendant had an outstanding warrant at the time of his arrest. However, the following exchange occurred during the officer's testimony:

> *Q*. Okay. All right. And so he was detained at that point?
>
> *A*. Correct.
>
> *Q*. Okay. All right. What happened after that?
>
> *A*. He returned with a warrant out of another jurisdiction.
>
> *Q*. Okay. Let's backup. Backup. Okay.

The prosecutor immediately left that line of questioning and did not return to the subject. Outside of the jury's presence, defendant moved for a mistrial, which the court denied. The trial

---

[4] "We review for an abuse of discretion a trial court's decision regarding a motion for a mistrial." *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

court also determined that a curative instruction "would do more harm than good," where the reference was brief and the officer did not act intentionally.

We conclude that mistrial was not warranted where defendant was not prejudiced by Baranski's unresponsive testimony. First, the testimony was brief, was not acknowledged by the prosecutor, and the line of questioning immediately changed to avoid any further mention of the warrant, therefore, it cannot be said that the error rose to an egregious level. Moreover, defendant acknowledged, at trial, that he did not want a curative instruction because he felt it might call attention to the warrant's existence with jurors who did not "catch" the testimony. Therefore, because of the brief reference to the issue, combined with the fact that the jury may have missed the brief subject altogether, it cannot be said that defendant's trial was unfair. Additionally, Baranski's unresponsive testimony does not support the argument that a mistrial was necessary. "[A]n unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *Haywood,* 209 Mich App at 228. The record clearly demonstrates that when the prosecutor asked, "What happened after that," the prosecutor was simply prompting Baranski to continue explaining the events of the investigation, especially considering that the prosecutor had already told Baranski not to testify regarding the warrant. Therefore, it is not apparent that the prosecution elicited that testimony, and a mistrial is not appropriate.

Moreover, based on the earlier stipulation, the jury already knew that defendant had been convicted of a felony. Even if the jury did understand the testimony to mean that defendant had been *suspected* of engaging in a prior criminal activity, in the terms of casting him in a bad light, it is significantly less prejudicial than the jury hearing that he had a previous *felony conviction,* as the warrant only represented an allegation, but the conviction represented actual guilt.

## C. IMPROPER TESTIMONY

Defendant also argues that Police Detective Daniel Bozek's testimony constituted an impermissible opinion about defendant's guilt. We disagree.[5]

---

[5] "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant did not object to Detective Bozek's testimony at trial; there for our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. Generally, to show the error affected substantial rights, it must be proven "that the error affected the outcome of the lower court proceedings." *Id*. Reversal is warranted only when "the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id*. at 763-764 (quotations marks and citation omitted). " 'Further, [this Court] cannot find error requiring reversal where a curative instruction could have alleviated any

-5-

"[A] witness cannot express an opinion on the defendant's guilt or innocence of the charged offense" because it is for the jury to decide whether a defendant is culpable. *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985). However, a police officer may provide lay testimony regarding his observations in a criminal matter and his "opinion formed as a result of those observations." *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988); see MRE 701 ("[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."). Further, it is not improper for the police to "explain the steps of their investigations from their personal perceptions." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012).

Defendant argues that the detective improperly vouched for his belief in defendant's guilt when he testified, during re-direct, as follows:

> *Q*. Okay. All right. And you've already testified, I believe, that the DNA swabs taken in this case were not sent; is that correct?
>
> *A*. Correct, they were not sent.
>
> *Q*. And you know why they weren't sent?
>
> *A*. Well, DNA and fingerprints are a process for us to identify someone. In this case[,] *we already had the subject identified*.
>
> The other part of the case was that there was a firearm used during the commission of the crime. DNA in this case, the swabbing of the gun would have been, the reason to send it out would be to connect the suspect to the gun itself, if we had no other way to connect it to him. But we had it connected to him because he was apprehended with the gun in his backpack that was on his person, so it is a long process for DNS, swabs aren't always conclusive, you know, we could have been waiting 6, 9 to up to a year for a response for those swabs, with, with no guarantee that the sample that was collected was of a quality to get a conclusive answer from it, so the decision was made not to spend that time and money for something that we had already established.
>
> *Q*. And the gun was found already in the possession of the defendant?
>
> *A*. Yes, it was.
>
> *Q*. Now, with regards to fingerprints, why were the fingerprints not sent?

---

prejudicial effect.' " *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010) (citation omitted).

*A.* Again, fingerprints are a tool for us in law enforcement to identify an unknown subject. If all we had was a description and no, no body in custody, we would then rely on fingerprint analysis to try to develop a suspect.

*In this case, we not only had a suspect that we were searching for within 40 minutes of the crime, the suspect was located and we had probable cause to make the arrest, we now had a body in custody, we had evidence linking the suspect, you know, bolstering our probable cause that he was involved in this crime.* So, again, we didn't expend the resources to tell us something that we already, we already knew. [Emphasis added.]

Defendant's contention that Detective Bozek vouched for his belief in defendant's guilt is without merit. Detective Bozek did not testify about defendant's guilt in general; rather, he was responding to specific questions regarding the investigative process and explaining his reasons why fingerprint and DNA analyses were not performed. He explained that those analyses would be used to identify an unknown subject, and in this case, the police had already identified their subject. Bozek's testimony was clearly related to his investigation and factors that influenced his decision during the investigation. Accordingly, Detective Bozek's testimony was not improper.

## D. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor committed misconduct by incorporating Detective Bozek's testimony in its closing argument. We disagree[6]

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). "[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "A prosecutor may not vouch for the credibility of his witnesses by suggesting that he has some special knowledge of the witnesses' truthfulness. [H]owever, the prosecutor may argue from the facts that a witness should be believed." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009) (quotation marks and citation omitted).

During closing arguments, when discussing why the police did not have the victim identify defendant or do DNA analysis, the prosecution stated as follows:

The officers indicated that he didn't need to do that . . . that at this point when you have the facts that we have here. The fact that the defendant is caught less than 45 minutes after the robbery occurs within 2 miles of that location, the

---

[6] To preserve a claim of prosecutorial misconduct, a defendant must "contemporaneous[ly] object and request[a] curative instruction." *Unger*, 278 Mich App at 235. Because defendant did not raise the issue of prosecutorial misconduct below, our review is for plain error affecting substantial right. *Carines*, 460 Mich at 763-764.

-7-

bike that matches exactly the description of the bike used by the perpetrator in this case[.]

> You know, DNA evidence, it is useful evidence sometimes, no doubt about it, and the People wouldn't say it wasn't, and it obviously is, but when these items are found by the police in his possession, okay, even if his DNA is on it, okay, we know that it is probably on it because it is in his possession, he's handling . . . those items. You know, so, you know, you decide as jurors what evidence you think is important and what is not important in this case.

The prosecutor's statement qualifies as permissible argument where he was simply arguing the facts in evidence and explaining why the police did not perform DNA analysis; and was not bolstering Detective Bozek's credibility. See *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007) (stating that "[t]he prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms.").

Even if the prosecutor erred in making the statement, defendant has not shown that he was prejudiced. *Carines*, 460 Mich at 763-764. Overwhelming evidence of defendant's guilt was provided at trial, including a firsthand identification of defendant, which was supported by the fact that defendant possessed the same clothing and bike as described by witnesses. Additionally, at the time of arrest, defendant had the victim's wallet in his possession, along with a stack of cash and a bag of coins, which was the same that was taken from the store during the robbery.

Moreover, the court instructed the jury at the end of trial that, "As jurors you must decide what the facts of this case are. This is your job and nobody else's" and "you must start with the presumption that the defendant is innocent. This presumption continues throughout the trial," which would have presumably cured any alleged error. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate statements," *Seals*, 285 Mich App at 22, and "Jurors are presumed to follow their instructions." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

## E. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that defense counsel was ineffective for failing to object to Detective Bozek's testimony and the prosecution's argument related to it. We disagree.[7]

---

[7] To preserve a claim of ineffective assistance of trial counsel for appellate review, a defendant must move for a new trial or for a *Ginther* hearing. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Because defendant did not move for a new trial or a *Ginther* hearing below, our review is limited to errors apparent on the record. *Id*. "A claim of ineffective assistance of counsel presents a mixed question of law and fact." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). "This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective

"To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance." *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). Defense counsel is not required to make a meritless objection. *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014).

For the same reason that the prosecutor did not commit misconduct, defense counsel was not ineffective. Bozek's testimony was not improper; therefore, objecting to that testimony or objecting to the prosecutor's use of that testimony during closing argument would have been meritless, and defense counsel was not required to make a meritless objection. *Chelmicki*, 305 Mich App at 69.

F. SEPARATION OF POWERS DOCTRINE AND CRUEL OR UNUSUAL PUNISHMENT

Defendant argues that his mandatory 25-year minimum sentence, imposed under MCL 769.12(1)(a),[8] violates the separation of powers doctrine because it prevented the trial court from exercising its discretion to sentence defendant to a shorter term of incarceration. We disagree.[9]

"The powers of government are divided into three branches; legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to

---

assistance of counsel claim." *Id*. A finding is clearly erroneous if "the reviewing court is left with a definite and firm conviction that a mistake has been made." *Lopez*, 305 Mich App at 693 (quotation marks and citation omitted).

[8] MCL 769.12(1)(a) provides as follows:

(1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

(a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, *and 1 or more of the prior felony convictions are listed prior felonies*, the court shall sentence the person to imprisonment for not less than 25 years. Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.

[9] We review preserved constitutional claims de novo. *Unger*, 278 Mich App at 242. Because defendant did not raise this issue below, our review is for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

another branch except as expressly provided in this constitution." *People v Garza*, 469 Mich 431, 433; 670 NW2d 662 (2003); Const 1963, art 3, § 2. "[T]he ultimate authority to provide for penalties for criminal offenses is constitutionally vested in the Legislature. The authority to impose sentences and to administer the sentencing statutes *enacted by the Legislature* lies with the judiciary." *Garza*, 469 Mich at 434 (citations omitted), citing *People v Hegwood*, 465 Mich 432, 436-437; 636 NW2d 127 (2001).

"The separation of powers doctrine has never been interpreted in Michigan as meaning there can never be any overlapping of functions between branches or no control by one branch over the acts of another." *People v Trinity*, 189 Mich App 19, 22-23; 471 NW2d 626 (1991). "Some overlapping is permissible provided the area of one branch's exercise of another branch's power is very limited and specific." *Id*.

MCL 769.12(1)(a) is very specific, in that it limits its application to a small subset of offenders. Specifically, the statue's applicability is limited to defendants charged as fourth-habitual offenders, where at least one of the prior offenses is a "listed" crime. Additionally, the underlying subsequent offense must be a "serious crime," which includes armed robbery. MCL 769.12(6)(*iii*). To the extent that defendant argues that the judiciary's discretion is *improperly* limited by the Legislature, the argument is without merit because the Legislature is constitutionally responsible "to provide for penalties for criminal offenses." *Garza*, 469 Mich at 434. The judiciary is then responsible to "administer the sentencing statutes" that are "*enacted by the Legislature.*" *Id*.; *Trinity*, 189 Mich App at 21. "Statutes enjoy the presumption of constitutionality." *Id*. "The party challenging a statute's constitutionality has the burden of proving its invalidity." *Id*. We conclude that defendant has failed to overcome the presumption that MCL 769.12 is constitutional.

We also reject defendant's argument that the 25-year minimum sentence was cruel or unusual because it was not proportionate to the offender or the offense.[10]

The United States Constitution prohibits cruel and unusual punishment, see US Const Am VIII, and the Michigan Constitution prohibits cruel or unusual punishment, see Const 1963, art 1 § 16. "In deciding if punishment is cruel or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states." *People v Bowling*, 299 Mich App 552, 557-558; 830 NW2d 800 (2013 1 (1990).

A legislatively mandated sentence is presumptively proportionate. *People v Davis*, 250 Mich App 357, 369; 649 NW2d 94 (2002). Additionally, "[A] proportionate sentence is not cruel and unusual." *Bowling*, 299 Mich App at 558. In order to overcome the presumption of proportionality, a defendant "must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000).

---

[10] We review defendant's unpreserved challenge for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

Defendant does not present any argument that the sentence is cruel or unusual when considering other crimes in this state or similar crimes in other states. Rather, he argues, in a conclusory manner, that a 25-year-minimum sentence that does not allow a judge to take into account any individual circumstances or rehabilitative propensity was so excessive as to constitute cruel or unusual punishment. Therefore, he has failed to articulate any unusual circumstances that render the presumptively proportionate sentence disproportionate.

Accordingly, defendant has not demonstrated a plain error affecting his substantial rights.

Affirmed.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro