*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
March 5, 2020

v

WILLIAM MATTHEW WORKMAN,

Defendant-Appellant.

No. 340893
Clinton Circuit Court
LC No. 17-009801-FH

Before: MURRAY, C.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions[1] of two counts of breaking and entering a building with intent to commit a larceny, MCL 750.110, and one count of unlawfully driving away an automobile (UDAA), MCL 750.413. Defendant was sentenced as a fourth felony habitual offender to a prison term of 15-40 years. We affirm in part and remand in part.

## I. BACKGROUND

Defendant's convictions arise from offenses committed in the early morning hours of December 22 and 23, 2016. On December 22, 2016, MPC Cashway Lumber (MPC) a business in Clinton County, Michigan was broken into in the middle of the night. Shortly thereafter, a 2005 Ford Focus was stolen from TL Contracting (TL), a neighboring business. On the same day, a pole barn was broken into on Taft Road in Bingham Township, Clinton County, Michigan. On December 23, 2016, shortly after midnight, a firearm was stolen out of a vehicle parked in a subdivision north of Fowler around midnight. Both the TL and Taft Road locations had surveillance video of the break-ins that occurred on December 22. Defendant was known to law enforcement in Clinton County at the time and was a suspect in some other criminal events that occurred during this period. After reviewing the surveillance video, which matched defendant's physique, an investigation began into defendant for the December break-ins. Defendant was arrested on December 28, 2016, for a parole violation by a St. Johns' police officer and held at the

---

[1] The trial court dismissed one count of larceny of a firearm.

Clinton County Jail. While at the jail, defendant asked a corrections officer if he could have his phone back to make a call. The officer gave him the phone and defendant performed a factory reset.

On January 3, 2017, Deputy Michael Leasher, a forensic cell phone analyst for the Clinton County Sheriff's Department, and Detective Sean Dush, a lieutenant with the Clinton County Sheriff's Office, went to the home of defendant's girlfriend, Christine Moggo. Moggo had visited the defendant in the Clinton County jail on December 31, 2016. They informed her that they had viewed the video from her visit and wanted to know what was on the paper that defendant showed her during the visit. She told them that the note contained the username and password for his Google account and that he asked her to delete the account, specifically the Google Maps application. Moggo was unable to log into the account with the password given to her by the defendant so she reset the password. However, she had not deleted the account. Using the password provided to him by Moggo, Deputy Leasher logged into defendant's Google account and changed the password in order to preserve the account. He then obtained a search warrant for defendant's phone and for the Google accounts connected to that phone. Upon receiving the warrant, he did a phone dump using software called Cellebrite and then reviewed all the tracking data from defendant's phone including the GPS locations recorded.

At trial, Deputy Leasher testified that he used the Google Maps' information he had obtained from defendant's phone to generate a map and provided a timeline of the phone's locations on December 22 and 23, 2016. He testified that beginning at midnight on December 22, the map showed the location of defendant's phone to be at 1207 Cleo Street in Lansing where the defendant resided. From there the phone's GPS location showed the phone was transported to the location of MPC Lumber and its neighboring business TL Contracting which was in walking distance from MPC. From TL Contractors the phone was tracked to Taft Road and was there roughly for about a half hour. From Taft Road, the phone was tracked back to defendant's residence at Cleo Street and then to defendant's girlfriend's apartment in St. Johns. Regarding December 23, he testified that the phone's GPS location showed that the phone had been transported north of Fowler sometime between 12:14 a.m. and 1:01 a.m. From there the phone was tracked toward Lansing where it was stationary at Clark Rd from 3:44 a.m. to 4:20 a.m. When the phone started moving again, it was tracked to defendant's house on Cleo Street. Deputy Leasher also testified that the officers retrieved a backpack from defendant's brother's house (where defendant was residing) and that backpack or one similar to it was seen on the surveillance video from TL Contractors security on the night of the break-in. Detective Dush testified that a bike that belonged to defendant's brother was found by the gate of TL Contractors.

Defendant's friend, Delton Warren and Moggo also testified. Warren testified that the defendant called him in the early morning hours of December 23 and asked him for a ride. When Warren picked him up, defendant first told Warren that he had been driving a girlfriend's car when he swerved off the road into a ditch trying to avoid hitting a deer. He then later admitted that the car he had been driving was stolen. Moggo testified that she found a ski mask in her home after her interview with the detectives and turned it over to the police. The mask matched the mask seen on the surveillance video worn by the individual who stole the Ford Focus from TL Contracting.

The jury returned a guilty verdict from which defendant now appeals.

## II. UNREASONABLE SEARCH AND SEIZURE

Defendant first argues that the evidence obtained from the search of his Google Cloud account should have been suppressed because the search was "warrantless" given that the warrant procured by the police did not authorize the search of his Cloud data. We disagree.

Defendant did not file a motion to suppress in the trial court, thus this issue is unpreserved on appeal. This Court reviews unpreserved issues for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

In general, law enforcement officers are required to obtain a warrant before executing a search. "The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000) (citations omitted). *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2002). Searches without a warrant are unreasonable "subject only to a few specifically established and well-delineated exceptions." *Katz v United States*, 389 US 347, 357; 88 S Ct 507; 19 L Ed 2d 576 (1967).

The search warrant obtained by the police in this matter included the following language:

> The PROPERTY to be searched for and seized, if found, is specifically described as: Subscriber and Call Logs, to include Cloud, SMS and MMS data for the phone number **517-204-4575.** To include all Email's [sic] to and from account worksrightl@gmail.com. To include subscriber name, means of account payment, credit cards used, locations of payments and the previously mentioned log and file data for the dates of **September 14, 2016 through December 31, 2016.** Also any IP numbers associated with or used to place calls from.

We find, contrary to the defendant's argument, that the warrant specified defendant's Google Cloud data. Accordingly, the evidence procured from the search of defendant's Google Cloud account was not unlawfully obtained by means of a "warrantless" search.

## III. INSUFFICIENT EVIDENCE

Defendant next contends that there was no direct evidence to support the prosecution's argument that defendant was the individual who logged into his Google Cloud account nor the person carrying his phone in the early morning hours of December 22-23, 2016. We disagree.

In reviewing a claim of insufficient evidence, the evidence presented below must be viewed in the light most favorable to the prosecution; the test is whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515-516; 489 NW2d 748 amended on other grounds 441 Mich 1201 (1992); *People v Hutner*, 209 Mich App 280, 282; 530 NW2d 174 (1995).

Contrary to defendant's argument, direct evidence is not required. "Circumstantial evidence and reasonable inferences arising therefrom can sufficiently establish the elements of a crime." *People v Schultz,* 246 Mich App 695, 702; 635 NW2d 491 (2001). To sustain a conviction for breaking and entering with intent to commit larceny, it must be established that "(1) the

defendant broke into a building, (2) the defendant entered the building, and (3) at the time of the breaking and entering, the defendant intended to commit a larceny therein." *People v Toole*, 227 Mich App 656, 658; 576 NW2d 441 (1998). The elements of UDAA are: "(1) possession of a vehicle, (2) driving the vehicle away, (3) that the act is done willfully, and (4) the possession and driving away must be done without authority or permission." *People v Hendricks*, 200 Mich App 68, 71; 503 NW2d 689 (1993). It is undisputed that someone broke into MPC Lumber and then later a pole barn on Taft Road and stole property. There is also no dispute that someone stole a vehicle from TL Contracting's parking lot.

We conclude that the evidence on the issue of whether the defendant was the perpetrator of the crimes was sufficient. In addition to Deputy Leasher's testimony regarding the location of the cell phone, there was also testimony given by him that defendant's phone was used to look up the location of MPC on December 22 while the phone was located at 1207 Cleo Road, where the defendant was residing with his brother. As noted previously, the phone was tracked to the locations of the break-ins and the car theft at times contemporaneous with the crimes. Moggo, who both purchased and paid for the phone, testified that the defendant was very protective of his phone and did not allow others access to it.

Not only was there evidence that linked defendant's phone to the location of the crimes, but defendant's friend, Delton Warren, also testified to defendant's admission that the car he drove into a ditch on the 23rd was stolen. Additionally, a backpack recovered from defendant's room and a ski mask recovered from defendant's ex-girlfriend's house matched the backpack and mask seen in the video taken from TL Contracting. Lastly, when the police responded to the MPC break in, they found defendant's brother's bike leaning on a fence outside.

Viewing the circumstantial evidence and reasonable inferences in the light most favorable to the prosecution, there was sufficient evidence to convince a jury beyond a reasonable doubt that defendant committed the crimes for which he was convicted.

IV. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor and its witness misled the jury regarding the process by which the detective gained access to defendant's Google Cloud account. We disagree.

Defendant failed to object to the prosecutor's statements so this issue is unpreserved. "Unpreserved issues are reviewed for plain error affecting substantial rights." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 475-476 (citation omitted).

"Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). "To determine if a prosecutor's comments were improper, we evaluate the prosecutor's remarks in context, in light of defense counsel's arguments and the relationship of these comments to the admitted evidence." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

In support of his argument, defendant argues that the prosecution witness, Deputy Leasher and the prosecutor improperly referred to the researched Google Cloud GPS history of the defendant's cell phone as "defendant's GPS history." Defendant contends Deputy Leasher should have testified that he researched defendant's Google Cloud GPS history for "whoever" was logged into the account. Defendant further contends that the prosecutor's citation to this testimony and use of the word "his" misled the jury to believe that the Google search resulted in a definitive determination that the defendant was the person using the cellphone. In context, we find that neither the witness to whose testimony was referenced, nor the prosecutor made such an assertion. It is apparent to this Court that "his" in this context refers to the owner of the account as opposed to a definitive declaration by the prosecution (or its witness) that it was defendant in possession of the phone generating the GPS history. Moreover, if there was any "confusion", it could have been further clarified on cross-examination.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant's ineffective assistance of counsel claim is also not preserved for appeal. "In order to preserve the issue of effective assistance of counsel for appellate review, the defendant should make a motion in the trial court for a new trial or for an evidentiary hearing." *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Defendant filed three motions for remand that were denied. "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

Defendant argues through counsel and in his Standard 4 brief, that counsel was ineffective for:

1.  Failing to obtain discovery materials.

2.  Failing to file a motion to suppress evidence.

3.  Failing to object to the prosecutor's misrepresentations of the evidence.

4.  Failing to consult with a cell phone expert.

5.  Failing to challenge cell phone expert testimony.

6.  Failing to investigate witness Delton Warren.

7.  Failing to call exculpatory witnesses Jacob Johnson and Nichole Garvie.

8.  Failing to file a motion to quash bind-over.

9.  Failing to view the vising room video from Moggo's visit with defendant.

10. Failing to object to the scoring of OV 12.

To establish ineffective assistance of counsel, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2)

there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

## A. DISCOVERY MATERIALS

In his Standard 4 Brief, defendant argues that trial counsel was ineffective for failing to obtain discovery of the Google account data. He relies on a final pretrial conference record wherein defense counsel listed the items that were requested, but still not received. At that hearing, the court denied defense counsel's request for an adjournment and stated that the court would deal with the issue at trial. The issue was not raised again. Defendant assumes that trial counsel never received the Google discovery. However, a review of the trial record reveals that defense counsel effectively interrogated Deputy Leasher regarding the Google search. Further, defendant failed to point to any one instance where trial counsel was unprepared to cross examine the witness regarding this evidence.

## B. MOTION TO SUPPRESS EVIDENCE

Defendant next argues that counsel was ineffective for not bringing a motion to suppress the evidence obtained from the warrant. He reiterates his failed argument that the search of defendant's Google Cloud account was "warrantless" because the warrant did encompass a search of defendant's Google Cloud data. His other two bases upon which he asserts that counsel should have brought a motion to suppress are equally meritless. Those arguments are that,

1) Deputy Leasher's statement in his affidavit, that the defendant told his girlfriend to delete his Google mail account (especially the map's application) was false, and

2) the facts contained in "item g" of Deputy Leasher's affidavit were obtained during a search that required a warrant.

We reject both arguments.

Defendant's claim that Deputy Leasher's statements in the affidavit regarding Moggo being directed to delete material from the cell phone is unavailing. Moggo testified that defendant told her to delete the maps application. Defendant's second argument, that the initial search of the phone required a warrant, is also without merit because once defendant gave Moggo access to his information by providing her with the username and password, he no longer had an expectation of privacy to that account. Thus, Deputy Leasher did not need a warrant at the time Moggo accessed defendant's Google account from her phone, with a password she had created.

Therefore, counsel's failure to file a motion to suppress the evidence obtained from the warrant was not ineffective assistance of counsel. "[D]efense counsel is not ineffective for failing to pursue a futile motion." *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008).

## C. PROSECUTOR MISCHARACTERIZATIONS

Defendant next asserts that trial counsel was ineffective for failing to object to the prosecutor's alleged mischaracterizations concerning the difference between the cell phone and

Google cloud data. Contrary to defendant's assertion, there are multiple examples on the record where trial counsel had the witness clarify any confusion regarding this evidence during cross-examination. Additionally, as discussed above, the prosecutor's manner in which he phrased his questions to Deputy Leasher did not amount to prosecutorial misconduct. Accordingly, trial counsel's lack of objection to the prosecutor's alleged mischaracterizations did not amount to ineffective assistance of counsel. "A defendant is not denied the effective assistance of counsel by counsel's failure to make a futile or meritless objection." *People v Johnson*, 315 Mich App 163, 175; 889 NW2d 513 (2016).

## D. CONSULT WITH CELL PHONE EXPERT

Defendant additionally claims that counsel was ineffective for failing to call or consult with a forensic cell phone expert to testify about the inherent unreliability of the Google Cloud evidence due to the many variables involved. A review of the record shows that trial counsel did in fact elicit the very information defendant is arguing would have been provided by a forensic cell phone expert during her cross examination of Deputy Leasher. Consequently, a consult was not necessary and trial counsel was not ineffective for failing to consult or call an expert in cell phone forensics.

## E. CHALLENGE CELL PHONE EXPERT TESTIMONY

In his attorney's supplemental brief, defendant argues that counsel was ineffective for failing to challenge the testimony of Deputy Leasher by failing to move in limine to exclude his testimony, to move for a *Daubert*[2] hearing, or for a mistrial or curative instruction. Defendant's arguments all flow from the primary assertion that Deputy Leasher offered expert testimony without first having been qualified as an expert under MRE 702.

The admission of expert witness testimony is governed by MRE 702, which provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

We agree with defendant that Deputy Leasher was an expert witness and the prosecutor should have moved for his qualification before he began testifying. He provided technical testimony that was necessary for the jury to understand the evidence. Trial counsel's failure to object to Deputy Leasher's qualification further constituted deficient performance. Trial counsel's strategy appeared to be focused on challenging the basis for Deputy Leasher's testimony, i.e. the authentication of the Google records, instead of his qualifications. However, the failure to object to Deputy Leasher's qualification was not outcome determinative because an objection by counsel

---

[2] *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579, 589; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

would have just led to his qualification. Deputy Leasher testified that he had been employed in law enforcement for the past 24 years. He had two years of computer forensics training and two years of work experience in the forensic examination of computers and phones.

Defendant also suggests that trial counsel should have filed motions in limine to suppress testimony from the Google account based on the failure to obtain a search warrant, and to exclude any location data testimony attributable to defendant or his phone. However, such motions would not have been successful. The phone was properly searched pursuant to a search warrant as discussed above, and the testimony could have been made admissible by authentication from proper witness testimony or certification of records. Thus, a motion in limine would not have excluded the evidence.

Defendant also argues that trial counsel failed to effectively challenge misleading testimony. He contends that Deputy Leasher was allowed to interchange "Google records" and "cell phone records" when referring to the Google maps locations. Defendant claims Deputy Leasher was further allowed to mislead the jury into believing that the Google account was tracking defendant's cell phone. These contentions are belied by the record. Deputy Leasher was very clear that that the location data came from the Google account. Defense counsel further flushed out this fact through repeated objections and cross-examination. Deputy Leasher admitted that he could not tell whether defendant was the person logged into his Google account or had possession of the phone at the times in question. The court also clarified, "you're tracking his phone, right? . . . You don't know at that time who had it," to which Deputy Leasher responded, "Correct." This same testimony also defeats defendant's additional argument that he was prejudiced by the admission of Deputy Leasher's testimony in that the jury was misled to believe that the location data came from defendant's phone and that law enforcement was able to track defendant's movements from his phone.

Trial counsel's failure to challenge Deputy Leasher's testimony did not prejudice defendant where, even absent the location data, there was overwhelming evidence to support the counts for which defendant was convicted. Warren testified to defendant's admission that the car he drove into a ditch on December 23 was stolen. Additionally, there was physical evidence of the video, mask, backpack, and bike. Further, when the police responded to the MPC break-in, they found defendant's brother's bike leaning on a fence outside.

## F. WITNESS DELTON WARREN

Defendant next asserts that trial counsel should have reviewed the interrogation video of witness Delton Warren or investigated him in order to impeach him with his prior crimes of dishonesty. According to defendant, had trial counsel watched the video of Warren's interrogation, she would have been able to elicit his statements to detectives that he never saw the car that hit a deer. However, Warren stated during his testimony at trial that he "never saw a car" on the night he picked defendant up. Furthermore, assuming that the decision not to impeach Warren was the result of counsel's failure to investigate and not a strategic decision, defendant fails to show how trial counsel's failure to obtain a criminal background check on Warren was an outcome-determinative error. The defendant must show that, but for counsel's error, there is a reasonable likelihood that the result would have been different. *People v Shively*, 230 Mich App

626, 628; 584 NW2d 740 (1998). Moreover, Warren's testimony regarding the admission of guilt was but a small portion of the evidence against the defendant.

## G. EXCULPATORY WITNESSES

Defendant argues that trial counsel was also ineffective for failing to call exculpatory witnesses, Nichole Garvie and Jacob Johnson. "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (citation and quotation marks omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). In Garvie's affidavit, she stated that if she had been contacted and called by trial counsel she would have testified that sometime in early December 2016, defendant borrowed and damaged her car when he hit a deer. The offenses for which defendant were convicted of occurred on December 22-23, 2016. Thus had counsel called her to testify, her testimony still would not have accounted for the defendant's whereabouts when the crimes were committed.

In his amended Standard 4 Brief, defendant faults counsel for not calling his brother, Johnson, as an exculpatory witness. Defendant claims Johnson would have testified, "that he used two of the Defendant's phones during the month of December" and that this testimony would have permitted the jury to consider that defendant's phone and Google Cloud account were not used exclusively by defendant. Defendant fails to establish the factual predicate for this claim of ineffective assistance of counsel claim where he did not provide an affidavit from Johnson. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

## H. SCORING OF OFFENSE VARIABLE 12

Defendant argues in his attorney's supplemental brief that counsel was ineffective for failing to object to the scoring of 10 points for offense variable (OV) 12. OV 12 is scored for contemporaneous felonious criminal acts. MCL 777.42(1). The contemporaneous felonious acts must be separate acts from that constituting the sentencing offense. *People v Light*, 290 Mich App 717, 723; 803 NW2d 720 (2010). Ten points are assessed when "[t]wo contemporaneous felonious criminal acts involving crimes against a person were committed" or "[t]hree or more contemporaneous felonious criminal acts involving other crimes were committed." MCL 777.42(1)(b) and (c). Defendant's one acquitted count of larceny of a firearm could not substantiate the scoring of 10 points under the statute. Defendant admits that the acquitted felony could be considered under OV 12 to assess five points for the contemporaneous commission of one felonious criminal act involving a crime against a person under MCL 777.42(1)(d), however he argues that this score was not supported by a preponderance of the evidence nor a ruling by the court. Plaintiff concedes that OV 12 was scored at 10 points in error.

"If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing *absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence*." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006) (citation omitted). The court made no findings of fact regarding OV 12 because it was not objected to or raised by either party at sentencing. Defendant's total OV score was 35, his OV Level was IV, and his sentencing

guideline range 34 to 134 months. A reduction of 10 OV points from 35 would change his OV points to 25, his OV Level from IV to III and his sentencing guideline range from 34 to 134 months to 29 to 114 months. Accordingly, defendant is entitled to resentencing because of the scoring error.

We also conclude that trial counsel's failure to object to the scoring constituted deficient performance. A reasonably competent attorney should have discovered that there was an insufficient amount of contemporaneous felonious criminal acts to support assessing 10 points. Because we have remanded this case for re-sentencing based upon OV 12, we decline to reach the issue of whether counsel's deficient performance was outcome determinative.

## I. MOTION TO QUASH BIND OVER

A defendant must be bound over for trial if, at the conclusion of the preliminary examination, probable cause exists to believe that the defendant committed the crime. *People v Orzame*, 224 Mich App 551, 558; 570 NW2d 118 (1997). Defendant asserts that trial counsel should have filed a motion to quash the bind-over because the testifying officer established his identity as the perpetrator at the preliminary examination solely by relying on his Google account data that was insufficient to establish identity. However, even without the officer's testimony, there was other evidence presented by the prosecution to help establish identity. Specifically, there was physical evidence of the video, mask, backpack, and bike. Accordingly, trial counsel was not ineffective for failing to file a futile motion. It is well established that trial counsel is not required to make a futile motion. *People v Fike*, 228 Mich App 178, 182-183; 577 NW2d 903 (1998).

## J. VISITING ROOM VIDEO

Lastly, defendant asserts that trial counsel was ineffective for failing to view the video recording of Moggo's visit in the jail visiting room. Defendant contends that had she viewed the video, she would have known that Moggo's testimony regarding him asking her to delete the maps portion of his Google account during her visit was false. Because he failed to offer any proof that trial counsel did not view the video or give any substantive arguments as to how he was prejudiced by this "error", this issue is abandoned. An issue may be deemed abandoned where a defendant fails to brief the merits of a claim of error. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

## VI. EVIDENTIARY ERROR

In his Standard 4 Brief, defendant raises multiple claims of evidentiary error.

"The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion." *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013), citing *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes . . . ." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014).

Defendant first argues that the trial court abused its discretion by not offering any explanation on the record for overruling defendant's objections to Deputy Leasher's testimony concerning defendant's Google and phone records. We disagree. A review of the record shows

that the trial court did establish its reasoning for overruling trial counsel's objections at the onset of the objections, it just did not offer an explanation after every subsequent objection.

Next, defendant argues that the Google records and the testimony from Deputy Leasher regarding the Google and phone records constituted inadmissible hearsay because the records had not been certified in accordance with MRE 902(11). We agree. MRE 902(11)(B) allows records "of regularly conducted business activity that would be admissible under rule 803(6)" to be authenticated "by a written declaration under oath by its custodian or other qualified person certifying that" the record meets the requirements of MRE 803(6). MRE 803(6) is "the business records exception to the hearsay rule[.]" *People v Fackelman*, 489 Mich 515, 536; 802 NW2d 552 (2011).

Generally, phone and Google records would be admissible under MRE 803(6). In this case, though, the prosecution sought to introduce testimony from Deputy Leasher regarding defendant's Google account and phone records as well as the maps Deputy Leasher generated from defendant's GPS history as Deputy Leasher's own records. However, Deputy Leasher's testimony, along with the maps he created, was based on information that came from defendant's Google and Sprint phone accounts. As such, absent certification, they required testimony from the custodian of these records or another qualified witness that would show that the records met the exception under MRE 803 (6). The prosecution did not offer any such testimony. Therefore, the Google records and the testimony from Deputy Leasher regarding the Google and phone records was hearsay and it was plain error for the trial court to allow their admission.

Even though we conclude that the trial court erred in admitting the records and Deputy Leasher's testimony, defendant has not shown that reversal is required. Evidentiary error does not merit reversal unless it involves a substantial right, and "after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (citation and quotation marks omitted).

Here, there was other evidence presented that supported the inference that defendant was the perpetrator. Testimony was presented from defendant's girlfriend that he had told her to delete his Google account and from his friend Warren that Warren had picked defendant up and defendant told him he had stolen a car and drove it into a ditch trying to avoid hitting a deer. Additionally, Detective Dush testified that defendant told him he had hit a deer with a car and that the car went into a ditch. There was also testimony from Deputy Leasher that the police retrieved a backpack from defendant's room at his brother's house and a ski mask from defendant's girlfriend's house that were both seen being worn by the individual on the video from TL Contracting. This evidence, without reference to any Google or phone records, supports the inference that defendant was the perpetrator of the crimes. "An erroneous admission of hearsay evidence can be rendered harmless error where corroborated by other competent testimony." *People v Hill*, 257 Mich App 126, 140; 667 NW2d 78 (2003). Accordingly, we conclude that the erroneous admission of the records and Deputy Leasher's testimony regarding the records did not affect defendant's substantial rights.

VII. SENTENCING

-11-

Defendant argues that the trial court erred by assessing 10 instead of zero points for OV 19, MCL 777.49(c), because defendant did not interfere with the administration of justice. We disagree.

A claim that the sentencing guidelines range was improperly calculated is preserved by raising the issue "at sentencing, in a motion for resentencing, or in a motion to remand." *People v Kimble*, 470 Mich 305, 311; 684 NW2d 669 (2004). Here, defendant preserved this issue by raising the issue at sentencing. We review de novo the trial court's interpretation and application of the statutory sentencing guidelines. *People v Jackson*, 487 Mich 783, 789; 790 NW2d 340 (2010). On appeal, "the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

OV 19 relates to conduct that constitutes interference with the administration of justice[3]. Interference with the administration of justice includes, but is not limited to, acts that constitute "obstruction of justice." *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010). Here, the trial court scored OV 19 at 10 points for interference with the administration of justice because the defendant asked a corrections officer to give him his phone back after which he performed a factory reset on it and because he asked his girlfriend to delete his Google account, specifically as it related to the maps' history. Defendant's attempt to hide his phone's data in conjunction with his instruction to his girlfriend to delete his Google account were attempts to interfere with the investigation by concealing evidence. Thus, the trial court did not err when it assessed 10 points for OV 19 during sentencing. This Court has previously found that attempts to hide evidence can support an assessment of 10 points OV-19. *Id* at 203-204.

Defendant also argues that the court abused its discretion when it imposed an upward departure sentence because the sentence was disproportionate and unreasonable. Because we are remanding for re-sentencing we decline to address this issue.

VIII. OTHER STANDARD 4 BRIEF ISSUES

"This Court reviews the grant or denial of an adjournment for an abuse of discretion." *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

Defendant asserts that further testing should have been done on all of the DNA samples taken and the trial adjourned until all results had been received from the state lab. Defendant contends that this evidence could have been exculpatory and exonerated him. We disagree.

---

[3] The statue provides that an assessment of ten points is appropriate where "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c)

"An adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence." MCR 2.503(C)(2).

> Absent a showing of suppression of evidence, intentional misconduct, or bad faith, the prosecutor and the police are not required to test evidence to accord a defendant due process. Nor does due process require that the prosecution seek and find exculpatory evidence. Although the prosecution bears the burden of proving guilt beyond a reasonable doubt in a criminal trial, it need not negate every theory consistent with defendant's innocence, nor exhaust all scientific means at its disposal. [*People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003)].

Here, defendant argues that nine swabs of DNA were collected from the three vehicles parked in the TL Contracting parking lot. Results from testing were provided for two of these nine samples and one of these samples indicated that there was DNA present from multiple contributors. Thus, defendant argues that *all* of the DNA evidence collected should have been tested, especially the DNA evidence from the stolen car, because further testing could have provided direct physical evidence that exonerated him. However, defendant's theory that the DNA evidence from the stolen car could have been exculpatory is highly speculative. Further, the defendant cites no authority that would have required the prosecution to complete DNA testing of all nine samples. See, e.g., *People v Vaughn*, 200 Mich App 611, 619; 505 NW2d 41 (1993), rev'd on other grounds 447 Mich 217 (1994), where this Court noted a clear distinction between the failure to disclose evidence and the failure to develop evidence. Additionally, defendant has failed to demonstrate that he was unfairly prejudiced by the court's denial of an adjournment to wait for the completion of further DNA testing. Under the circumstances, we cannot conclude that the trial court abused its discretion by denying the motion to adjourn.

Defendant finally argues that the cumulative effect of the errors requires that we reverse his convictions or remand for a *Ginther*[4] hearing. However, because he fails to cite any of the errors he feels warrant reversal this argument should be rejected. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998) (citation omitted).

We affirm defendant's convictions, but remand for resentencing in light of the error in scoring OV 12. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro

---

[4] *People v Ginther*, 390 Mich 436, 440; 212 NW2d 922 (1973).