*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 23, 2020

Plaintiff-Appellee,

V

No. 344890
Ingham Circuit Court
LC No. 17-000379-FC

ALPHONSO RUSSELL,

Defendant-Appellant.

Before: METER, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (multiple variables) and MCL 750.520b(1)(d) (actor was aided or abetted by one or more persons); unlawful imprisonment, MCL 750.349b(1)(c) (the person was restrained to facilitate the commission of another felony or to facilitate flight after the commission of another felony); assault by strangulation, MCL 750.84(1)(b); and domestic violence, third offense, MCL 750.81(2) and MCL 750.81(5). Defendant was sentenced to concurrent prison terms of 25 to 50 years for each CSC-I conviction, 20 years to 30 years for unlawful imprisonment, 160 months to 20 years for assault by strangulation, and 80 months to 10 years for domestic violence. We affirm.

## I. FACTS

On March 27, 2017, CR, the victim, moved into the Village Inn Motel with defendant after being introduced to him by her aunt. CR testified concerning the events that took place inside the motel room between March 27, 2017 and April 10, 2017.

CR testified that the first few days were "great," but things changed later that week. CR initially had consensual sexual intercourse with defendant. Later that week, defendant told her that a few of his friends needed to be with her sexually. CR testified that defendant's friends examined her body when they came to the motel room, and that defendant strangled her because she did not want to have sexual intercourse with defendant's friends. CR testified that defendant was on top of her and wrapped his hands around her neck until she could not breathe. When she awoke, she was naked and defendant told her to "get ready," and then two of defendant's friends

-1-

had sexual intercourse with her while defendant watched. CR testified that defendant choked and beat her if she disobeyed defendant and that he threatened to choke her.

CR testified that defendant and his friend had nonconsensual sex with her. CR told defendant "no" and "stop," and she tried to get up, but defendant pushed her down and told her to "shut up" and "hold still." In another instance, a few of defendant's friends held her down and had vaginal, anal, and oral sex with her. CR tried to fight off the men; however, defendant rubbed a gun down the side of her face and told her to be a "big girl" and to do what the men wanted. CR testified that her right shoulder was injured as a result of being held down.

CR testified that defendant had nonconsensual vaginal and anal sex with her on approximately April 8, 2017. CR told defendant that she wanted to go home and that she did not want to be in a relationship with him. In response, defendant shoved, pushed, and choked CR. CR thought defendant would have killed her if she fought back and that defendant told her that the only way she was going to leave was in a body bag.

CR's sister, LV, testified that CR was scared and not safe at the motel, and that CR sent her a message that indicated CR was not safe. CR's other sister, JR, testified that CR appeared to be afraid and depressed while living in the motel, which led JR to call the police.

Ingham County Sheriff Deputy William Lo contacted and interviewed CR on April 10, 2017. CR was terrified and crying, and gave Deputy Lo her account of the events that took place at the hotel during the interview. Deputy Lo noted that CR's timing was "off"; however, he testified that it was not uncommon for a victim like CR to lose their frame of reference.

CR was examined by a SANE nurse, who observed that CR had bruising to her neck, back, and chest, an abrasion on her chest and abdomen, and an injury and bruise on her left leg. CR also had a laceration with bruising in her anal area. The nurse collected DNA evidence during the examination. The DNA evidence was analyzed and there was very strong support that defendant contributed to the DNA found on the vaginal, anal, and neck swabs collected from CR. An expert in strangulation and forensic nursing testified that CR's symptoms and injuries were consistent with strangulation.

Defendant testified that he and CR engaged in consensual sex and that they did not have sex with other men. He testified that some of his friends stopped by the motel to take him to work, but that they did not have sex with CR. Defendant denied being violent and strangling CR or being aggressive toward her. Defendant testified that he did not see any injuries on CR when he left for work on April 10, 2017; however, he admitted that CR had one "passion mark" on the back of her neck from him. Regarding CR's bruises and marks on her back, defendant testified that they were "passion marks" and that he had never hit CR.

## II. ANALYSIS

In defendant's brief on appeal, he challenges the sufficiency of the evidence and argues that he received ineffective assistance of counsel. Defendant also filed a standard 4 brief, in which he argues that the prosecution engaged in misconduct, there was insufficient evidence to sustain his convictions, and that he was denied his right to confront an adverse witness. We disagree.

-2-

## A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecution failed to present sufficient evidence at trial to sustain his convictions. Defendant also argues that the verdicts were against the great weight of the evidence. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When determining whether the prosecutor presented sufficient evidence to sustain a conviction, this Court must view the evidence "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks and citation omitted).

> The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. [*People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks, citations, alteration, and emphasis omitted).]

"This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial." *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id.*

As an initial matter, defendant has abandoned his challenges to the sufficiency of the evidence regarding his convictions of CSC-I, assault by strangulation, and domestic violence. In defendant's brief on appeal, he merely cites evidence that refutes that defendant was away from the motel room for large amounts of time, that CR left the motel room at times, that CR was able to communicate with her sisters, and that CR provided an inconsistent timeframe. Defendant does nothing to argue how there was insufficient evidence to sustain his convictions, or how his convictions were against the great weight of the evidence. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). We thus decline to address defendant's argument relating to his convictions of CSC-I, assault by strangulation, and domestic violence.

Defendant argues that the prosecution presented insufficient evidence for the jury to find that CR had been restrained and convict him of unlawful imprisonment. To convict a defendant of unlawful imprisonment, the prosecutor must prove beyond a reasonable doubt that the defendant knowingly restrained another person to facilitate the commission of another felony or to facilitate flight after commission of another felony. MCL 750.349b(1)(c). "Restrain" means "to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority." MCL 750.349b(3)(a). "The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts." *Id.* It is for the fact-finder alone "to determine what

inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Oros*, 502 Mich at 239 (quotation marks and citation omitted). This Court must consider all reasonable inferences that can be fairly drawn from the evidence when considering the sufficiency of the evidence. *Id*.

We conclude that there was sufficient evidence to permit a rational trier of fact to find that defendant committed unlawful imprisonment. CR testified that defendant strangled her and was on top of her, and that she was unable to move when she attempted to do so. CR also testified that she tried to get up when defendant and another man had nonconsensual sex with her, but defendant pushed her back down, and that defendant told her "to shut up, too bad" and to "hold still." CR also testified that she was physically held down while men were having nonconsensual sex with her and that defendant rubbed a gun down the side of her face and told her to do what the men wanted. Further, CR testified that defendant shoved, pushed, and choked her on approximately April 8, 2017, after she told him that she wanted to go home and that she did not want to be in a relationship with him, and that he forced her to have sexual intercourse.

Although CR testified that she was not sure if defendant was one of the men who physically held her down during the encounter with multiple men, a reasonable juror could have reasonably inferred that he did. A reasonable juror could have also concluded that defendant forcibly restrained her with the gun. Additionally, a reasonable juror could have concluded that defendant forcibly restrained CR to facilitate the commission of CSC-I, assault by strangulation, or domestic violence. Thus, there was sufficient evidence for the jury to find beyond a reasonable doubt that defendant unlawfully imprisoned CR.

Defendant also argues that the trial court abused its discretion when it denied his motion for a new trial on the basis that the verdicts were against the great weight of the evidence. We disagree.

"Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "[A]bsent exceptional circumstances, issues of witness credibility are for the jury[.]" *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). Further, an argument premised on the credibility of a witness is not sufficient grounds for granting a new trial. *Id*. at 643.

Defendant raises essentially the same arguments with regard to the weight of the evidence as he raises with regard to its sufficiency, which we reject for the same reasons. The verdicts were not against the great weight of the evidence and the trial court did not abuse its discretion by refusing to grant defendant a new trial.

We finally note that defendant asserts, without providing authority or citation to the record, that his convictions were a result of jury bias. Without any supporting evidence of jury bias, we decline to address this argument. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and

elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied effective assistance of counsel when defense counsel failed to call witnesses identified by defendant, introduce exculpatory evidence, and impeach CR. We disagree.

Whether a defendant has been deprived of effective assistance of counsel is "a mixed question of law and fact[.]" *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review the trial court's factual findings for clear error, while questions of constitutional law are reviewed de novo. *Id.*

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. A defendant must also show that the result that did occur was fundamentally unfair or unreliable. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defendant first argues that he was denied effective assistance of counsel because defense counsel failed to call other witnesses to testify at trial. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy," *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), "which we will not second-guess with the benefit of hindsight," *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Id.* "A substantial defense is one that could have affected the outcome of the trial." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). A defendant's ineffective-assistance-of-counsel claim based on the failure to investigate or call witnesses will fail when the defendant does not produce affidavits describing testimony that would have been elicited from those witnesses or show how the proposed testimony would have benefited the defense. See *People v Davis*, 250 Mich App 357, 369; 649 NW2d 94 (2002).

Defendant's argument has no merit because defense counsel's theory of the case was that defendant did not commit the acts alleged by the victim, which was supported by defendant's trial testimony. Defendant does not articulate the defenses that trial counsel failed to present or how he was prejudiced by defense counsel's failure to raise those defenses. Further, defendant did not provide affidavits indicating what the other witnesses would have testified or how that testimony would have benefited his defense.

Defendant also notes that defense counsel did not introduce a receipt, dated April 10, 2017, that was found in the hotel room by police. It is unclear what defendant is attempting to argue by raising this piece of evidence. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009). Therefore, defendant has abandoned this issue.

Next, defendant argues that he was denied effective assistance of counsel because defense counsel failed to introduce evidence from his cellular telephone that was "potentially exculpatory and useful for impeachment" and that counsel *may* have failed to obtain exculpatory evidence. Defendant asserts that the text messages and photographs from the telephone would have been useful to impeach CR.

Decisions regarding what evidence to present are presumed to be matters of trial strategy. *Dixon*, 263 Mich App at 398. "When asserting ineffective assistance of counsel premised on counsel's unpreparedness, a defendant must demonstrate prejudice resulting from the lack of preparation." *People v Bosca*, 310 Mich App 1, 37; 871 NW2d 307 (2015).

Defendant has not established that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms. Defendant asserts, without providing this Court with any evidence, that his cellular telephone contained exculpatory information. Further, defendant has failed to establish that, but for defense counsel's alleged error, the result of the proceedings would have been different because defendant does not identify what exculpatory information his cellular telephone allegedly contained and how it would have benefited his defense.

Finally, defendant argues that he was denied effective assistance of counsel because defense counsel failed to impeach CR with her prior testimony. However, the record establishes that defense counsel impeached CR numerous times regarding inconsistencies with statements she made during the preliminary examination and to police. Although trial counsel may not have highlighted every aspect in which the trial testimony of CR was inconsistent with her previous statements, failure to impeach a witness on all contradictory aspects of his or her statements is a matter of trial strategy and does not necessarily constitute ineffective assistance of counsel. *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987).

Further, even assuming that defense counsel improperly failed to further impeach CR with her testimony from the preliminary examination, defendant has not shown the existence of a reasonable probability that, but for this error, the result of the proceeding would have been different. There was substantial evidence against defendant. CR testified concerning her account of the events. Additionally, several other witnesses provided testimony that supported CR's account of the events. Defendant has failed to show that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceedings would have been different.

## C. STANDARD 4 BRIEF

Defendant also raises a number of issues in his standard 4 brief, including that the prosecution engaged in misconduct[1] by knowingly eliciting false testimony, a challenge to the sufficiency of the evidence based on inconsistencies in CR's preliminary examination and trial testimony, and that defendant was denied his Sixth Amendment right to confront a witness. We disagree.

We first address defendant's unpreserved argument[2] that the prosecution engaged in misconduct by knowingly eliciting false testimony from CR. We disagree.

A claim of prosecutorial misconduct is reviewed de novo to determine if a defendant was denied a fair and impartial trial. *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004). However, when a claim of prosecutorial misconduct is unpreserved, "appellate review is for outcome-determinative, plain error." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Reversal is only warranted if the plain error leads to "the conviction of an actually innocent defendant," or where an error affects the "fairness, integrity, or public reputation" of the judicial proceedings. *Id*. at 763-764.

In support of the contention that the prosecution knowingly elicited false testimony from CR, defendant merely provides the following conclusory statement: "The complaintant [sic] [CR] gave testimony that was obviously contradicting to previously made statements and preliminary testimony that there is no doubt that the [prosecution] assisted with [CR's] 'lie.' " Defendant does not identify any specific portions of CR's trial testimony that differed from her testimony at the preliminary examination. Nor does defendant specifically mention any of CR's trial testimony

---

[1] This Court stated in *People v Jackson*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015):

> As this Court recently noted in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), although the term "prosecutorial misconduct" has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are "better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' "

For clarity and consistency's sake, and because it has become a term of art, we will utilize the term "prosecutorial misconduct."

[2] This issue is unpreserved because defendant did not timely and specifically object to the alleged misconduct, nor did defendant request a curative instruction. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003); *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

that was false. "Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008).

Regardless of defendant's failure to provide this Court with any factual basis to support his argument, CR's inconsistent testimony between trial and the preliminary examination does not establish that the prosecution knowingly elicited false testimony. See *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). Additionally, as noted above in the discussion of defendant's claim of ineffective assistance of counsel, defense counsel extensively cross-examined CR and impeached her with her preliminary examination testimony. Thus, defendant's argument fails.

Defendant next challenges the sufficiency of the evidence of his convictions on the basis of inconsistencies between CR's preliminary examination testimony and her testimony at trial. We disagree.

We preliminarily note that, just as defendant's brief on appeal did not adequately address the merits of his argument that there was insufficient evidence to sustain defendant's convictions of CSC-I, assault by strangulation, and domestic violence, defendant's standard 4 brief similarly announces that CR's inconsistent testimony meant there was not sufficient evidence to sustain his convictions without any supporting argument. However, unlike the brief on appeal, defendant's standard 4 brief provides citations to the record of CR's inconsistent testimony. Thus, we will address defendant's argument.

Defendant identifies four inconsistencies between CR's testimony at the preliminary examination and trial: whether CR asked to leave the hotel or to go on a run with defendant, whether the men wore condoms during oral sex, was there a particular way that defendant greeted his friends, and CR's general description of the events at the hotel on April 10, 2017. With the exception of the first inconsistency, all of defendant's examples of CR's inconsistent statements were brought out during cross-examination. Defense counsel impeached CR with her testimony from the preliminary examination, in an attempt to discredit CR's credibility. The jury ultimately found CR credible and convicted defendant on the basis of CR's trial testimony. "The jury is free to believe or disbelieve, in whole or in part, any of the evidence presented at trial." *Unger*, 278 Mich App at 228 (quotation marks and citation omitted). "We afford deference to the jury's special opportunity to weigh the evidence and assess the credibility of the witnesses." *Id*. at 228-229. Viewed in the light most favorable to the prosecution, there was sufficient evidence to sustain defendant's convictions, despite the inconsistencies between CR's preliminary examination testimony and trial testimony.

Defendant finally argues that the prosecution violated his Sixth Amendment right to confront CR. We disagree.

"The Confrontation Clause of the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .' " *People v Fackelman*, 489 Mich 515, 524-525; 802 NW2d 552 (2011), quoting US Const, Am VI. Similarly, "Michigan has also afforded a criminal defendant the right to 'be confronted with the witnesses against him,' adopting this language of the federal Confrontation Clause verbatim . . . ." *Id*. at 525 (citations omitted). "The Confrontation Clause is primarily a

functional right in which the right to confront and cross-examine witnesses is aimed at truth-seeking and promoting reliability in criminal trials." *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012) (quotation marks and citation omitted).

Defendant first asserts that the prosecution violated his Sixth Amendment right to confront CR by advancing "unbelievable objection[s] to keep from unmasking the antic[s]" of CR. It appears that defendant believes he was denied his Sixth Amendment right to confront CR without any interruption from the prosecution. Defendant's contention misunderstands the aims of the Confrontation Clause. Instead of allowing a defendant unfettered permission to cross-examine an adverse witness, "the right of confrontation is concerned with a specific type of out-of-court statement, i.e., the statements of 'witnesses,' those people who bear testimony against a defendant." *Fackelman*, 489 Mich at 528.

Defendant's assertion is better addressed as a challenge to his right to present a complete defense. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Unger*, 278 Mich App at 249 (quotation marks and citation omitted). However, a defendant does not have an absolute right to present evidence in his defense. *Id*. at 250. "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process," such as a state's power to "to establish and implement their own criminal trial rules and procedures." *Id*. (quotation marks and citation omitted). A defendant's right to present a defense is not infringed by enforcing the Michigan Rules of Evidence. See *id*. at 250-251 (discussing that the defendant's right to present a defense was not denied merely because evidence was excluded on the basis of MRE 402 and 703).

One of the "unbelievable objection[s]" that defendant identifies was a proper objection, made in accordance with the Michigan Rules of Evidence. The prosecution objected to defense counsel's elicitation of hearsay testimony under MRE 802. The trial court did not need to sustain the objection because defense counsel offered to rephrase the question to avoid eliciting hearsay. (Trial Transcript, April 19, 2018, pp 154-155.) Because defense counsel rephrased the question to avoid eliciting hearsay, defendant was not denied the right to present a defense. Moreover, even if the objection had been sustained and defense counsel was not able to rephrase the question, enforcing the Michigan Rules of Evidence would not infringe defendant's right. *Unger*, 278 Mich App at 250-251.

Defendant has also identified an objection that was not made for an evidentiary reason, but instead, was made to clarify defense counsel's questions (Trial Transcript, April 19, 2018, p 97). Additionally, defendant identified instances when the trial court addressed housekeeping matters, such as taking a break during trial or addressing a witness's scheduling conflict (Trial Transcript, April 19, 2018, pp 99-100). Defendant's assertions regarding these matters lack merit because they did not affect defendant's ability to present a complete defense.

Defendant also argues that the prosecution released CR from testifying without the trial court's knowledge. However, a review of the record reveals that both parties had finished questioning CR, that the jury did not have any questions for CR, and that the trial court released CR as a witness (Trial Transcript, April 19, 2018, p 170). Thus, defendant's argument fails.

Affirmed.

/s/ Patrick M. Meter
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien