PEOPLE v HARRIS

Docket No. 244289. Submitted February 10, 2004, at Lansing. Decided
    March 4, 2004, at 9:00 A.M.

Isaiah D. Harris was convicted by a jury in the Jackson Circuit Court,
    Edward J. Grant, J., of armed robbery, assault with intent to
    commit murder, and two counts of possession of a firearm during
    the commission of a felony. The defendant appealed.

The Court of Appeals *held*:

1. The outcome of the trial, in light of the overwhelming
evidence against the defendant, would not have been affected had
the prosecution disclosed to the defendant before trial the identity
of the person who informed the police that the defendant had
committed the crimes. The prosecution's failure to make such
pretrial disclosure does not require reversal of the defendant's
convictions.

2. The trial court did not err in denying the defendant's motion
to disqualify the prosecutor's office and his motion to exclude the
complainant's in-court identification of the defendant. The com-
plainant's identification of the defendant was based on her
memory of the incident. The prosecutor never made an improper
suggestion, implication, or assertion to the complainant that the
defendant had committed the crimes or that the case would not
proceed unless the complainant positively identified the defendant
as the person who committed the crimes.

3. Under the circumstances of this case, the defendant effec-
tively waived his right to counsel during an interrogation that
occurred eleven days after an interrogation that was halted when
the defendant requested the presence of an attorney. The defen-
dant was not in custody during the eleven-day period. The trial
court did not clearly err in ruling that the defendant effectively
waived his right to counsel during the second interrogation.

Affirmed.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*,
Solicitor General, *Henry C. Zavislak*, Prosecuting

Attorney, and *Jerrold Schrotenboer*, Assistant Prosecuting Attorney, Chief Appellate Attorney, for the people.

*Brunetta Brandy* and *George D. Lyons* for the defendant.

Before: HOEKSTRA, P.J., and FITZGERALD and TALBOT, JJ.

FITZGERALD, J. Defendant was convicted by a jury of armed robbery, MCL 750.529; assault with intent to commit murder, MCL 750.83; and two counts of possession of a firearm during the commission of a felony, MCL 750.227b. He was sentenced to prison terms of seventeen to fifty years for the armed robbery conviction, twenty-three to fifty years for the assault conviction, and to consecutive two-year terms for each of the felony-firearm convictions. Defendant appeals as of right. We affirm.

This case arises out of the robbery of a gasoline station and the shooting of Rhonda Eastman, an employee of the station. On February 14, 1992, Eastman observed a male enter the station wearing a black, feather-down jacket and black pants. Eastman testified at trial that this person, whom she identified in court as defendant, came toward her, pulled out a gun, and told her to "give me all your money." Eastman testified that defendant then asked if there were security cameras, told her to get on the ground, and then shot her. Eastman described the gun as a revolver with a barrel six to eight inches long. After defendant left the station, Eastman called 911 and lied on the floor to wait for paramedics and the police to arrive.

Detective Robert Cole testified that the Jackson County Sheriff's Department received an anonymous tip that defendant was the one who committed the

robbery. Defendant was picked up on February 25, 2002, for the purpose of conducting an interview. Before the interrogation began, defendant signed a *Miranda*[1] rights acknowledgement form. After stating, "I didn't do it," defendant requested the presence of an attorney, and the interview stopped. On that same day, Eastman viewed a lineup of suspects in which defendant appeared as suspect number six. Eastman recognized suspect number six, but stated, "I don't know." Because Eastman could not definitively identify which suspect in the lineup may have participated in the robbery, defendant was released.

A day after the lineup, Eastman called Detective Cole and inquired whether a second lineup could be conducted because she was sure that she could identify number six as the person who robbed the station and shot her. After being informed by the Jackson County prosecutor's office that a second lineup would not be possible, Detective Cole went to Eastman's house to further investigate Eastman's claim that she would be able to identify defendant in court if he were arrested. Detective Cole stated that Eastman confirmed that defendant was the person who committed the robbery and shot her.

On March 8, 2002, a warrant was issued for defendant's arrest. Detective Cole testified that, once defendant was in custody, Cole reviewed the *Miranda* statement of rights form with defendant and at no time did defendant request an attorney to be present during the investigation. Cole summarized the interrogation of defendant by testifying that he had asked defendant whether he had shot Eastman on purpose or whether it was an accident. Detective Cole stated that defendant then "broke down and said that he did and it was an

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

accident, that the gun just went off." Defendant also indicated to officer Cole that he had taken the drug ecstasy at the time and did not know what he was doing. Defendant also admitted during the interrogation that he walked up to Eastman with a gun and told her to "give me the money." Defendant stated that after he placed the gun on the counter and Eastman was on the ground, the gun had inexplicably fired. Defendant also admitted taking cigarettes and $50. Defendant further admitted that he was only trying to make some money for him and his girlfriend and that he never intended to shoot Eastman. Following the interrogation, defendant signed a handwritten confession, stating, in relevant part:

> I was only tryen [sic] to scare her . . . . I never meant to hurt her, I was on a drug I have never been on before without ex [ecstasy] I didn't mean to hurt her [.] I seen [sic] the money when she opened the draw [sic] and thaught [sic] it might be able to help me and Anna [Alley] get a roof over our head [.] I can't believe that this happen [sic] [.] If I wasn't on that drug I would have never done it . . . .

Bryan Schupbach, an experienced handgun repairman, testified that it would be highly unlikely for a revolver handgun to go off without someone pulling the trigger. He explained that the only way a handgun could fire accidentally is if someone had specifically tampered with the disconnecting rod of the gun.

In addition to the videotaped interrogation and signed statement by defendant, the prosecution also presented the testimony of Andre Bacon and Anna Alley, who both testified that defendant told them he robbed the station and shot Eastman. Bacon testified that he told Detective Cole that defendant had told him in a note that he had committed the offense. Bacon also testified that defendant told him he committed the

robbery for money and shot Eastman in order to get the cigarettes. Anna Alley testified that defendant was her boyfriend and that on the night of February 14, 2002, defendant told her he was going out to "hustle up some money" for them. Alley testified that when defendant returned he had cartons of cigarettes with him. Alley also testified that defendant had become very excited and nervous when they were watching a news broadcast that a Jackson-area gasoline station had been robbed earlier that evening. Alley testified that defendant later confided in her that he was the one who had robbed the station. On March 7, 2002, the day before defendant was arrested, Alley contacted Detective Cole and told him that defendant confessed to her.

Roberta Maurer testified that on February 14, 2002, she, defendant, Bacon, and Alley were living at her apartment. Maurer testified that when defendant returned to the apartment that night, they were watching the news about a gasoline station being robbed. Approximately a week later, defendant told Maurer that he was there the night the station was robbed, but that his friend had committed the crime and then gave him the cigarettes. Maurer also testified that while defendant and Alley were living at her apartment, she saw defendant with a revolver on several occasions.

Defendant denied committing any of the charged crimes. He testified that he signed a confession stating that he had accidentally shot Eastman because Detective Cole had told him to write it, but he admitted that the police had not forced him to grab a pen and write out the confession on his own. Defendant also admitted that he was not beaten or threatened into writing the confession. But defendant testified that he told Detective Cole that he had committed the crime because he thought that was what the police wanted to hear and

because he just wanted to leave the police station. Defendant stated that both Alley and Bacon lied about him telling them that he robbed the gasoline station and shot Eastman.

On rebuttal, Detective Cole testified that, despite his interrogation tactic of asking defendant if it was an accident that the gun went off, defendant was not coerced into giving the confession that he did. Cole also reluctantly divulged that Bacon was the anonymous informant. Cole testified that Bacon wanted to remain anonymous because he did not want defendant to know who informed police about defendant's involvement in the robbery.

After closing arguments and final jury instructions, defendant moved for a mistrial based on the failure of the police to disclose the identity of the anonymous informant before trial. The trial court denied the motion on the ground that defendant did not file a motion for disclosure. The court also acknowledged that defendant had ample opportunity to cross-examine Bacon on surrebuttal after learning that Bacon was the anonymous informant.

Defendant first argues that he was denied a fair trial by the prosecutor's failure to inform him of the name of the anonymous informant before trial began. We disagree.

A prosecutor's failure to disclose evidence requires reversal only if the court finds that the evidence was material. *People v Lester,* 232 Mich App 262, 282; 591 NW2d 267 (1998). Undisclosed evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* Accordingly, undisclosed evidence is material and reversal is required only if the undiscovered evidence " 'could rea-

sonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " *Id.*, quoting *Kyles v Whitley,* 514 US 419, 435; 115 S Ct 1555; 131 L Ed 2d 490 (1995).

Here, defendant asserts, without explanation, that the prosecutor's failure to disclose the name of the confidential informant "put the whole case in such a different light as to undermine confidence in the verdict." Defendant has failed to articulate how the information that Bacon was the anonymous informant would have been of significant use to defendant's case or how his pretrial discovery of this information would have affected the outcome of his case. Defendant does not explain how this alleged error affected the outcome of his case. Instead, defendant has announced a position, and left it to this Court to "discover and rationalize the basis for the claim." *People v Leonard,* 224 Mich App 569, 588; 569 NW2d 663 (1997). An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue. *Yee v Shiawassee Co Bd of Comm'rs,* 251 Mich App 379, 406; 651 NW2d 756 (2002). Nonetheless, in light of the overwhelming evidence against defendant, the outcome of the case would not have been affected had the prosecutor disclosed to defendant before trial that Bacon was the anonymous informant.

Defendant next argues that the trial court should have excluded the complainant's in-court identification of defendant and disqualified the entire prosecutor's office because defendant was subjected to an improperly suggestive pretrial identification procedure. We disagree.

At a pretrial lineup, the complainant failed to identify lineup participant number six, defendant, as the person who robbed the gasoline station and shot her.

However, the complainant testified that she contacted the police the next day and told them that she was certain defendant had committed the robbery. The prosecutor later met with the complainant to confirm whether she could identify defendant in court. Defendant argues that the prosecutor's postlineup communications with the complainant improperly suggested to the complainant that she had correctly identified defendant. More specifically, defendant claims that the prosecutor implied that defendant committed the crimes when he told the complainant that the prosecution would begin only if she agreed to identify defendant in court.

The trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous. *People v Barclay,* 208 Mich App 670, 675; 528 NW2d 842 (1995). Similarly, the determination whether a conflict of interest exists sufficient to require disqualification of the prosecuting attorney is a question of fact that is reviewed on appeal for clear error. *People v Mayhew,* 236 Mich App 112, 126; 600 NW2d 370 (1999). Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Johnson,* 466 Mich 491, 497-498; 647 NW2d 480 (2002).

An identification procedure violates a defendant's right to due process of law when it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification. *People v Gray,* 457 Mich 107, 111; 577 NW2d 92 (1998). Improper suggestion is often the result of the police or the prosecution informing the witness that the police have apprehended the right person. *People v Anderson,* 389 Mich 155, 178; 205 NW2d 461 (1973). For instance, in *Gray,* after making a tentative identification of the defendant at a lineup, the

victim was informed that the police had arrested a suspect, and was shown a photograph of the defendant. After seeing the photograph, the victim stated that she was sure that the defendant was the person who attacked her. *Gray, supra* at 109-110. In holding that the pretrial identification procedure was highly suggestive, the Court stated that it was concerned that witnesses would base their in-court identification on a photograph shown to the witnesses, rather than on a recollection of the actual crime. *Id.* at 112.

However, this case is distinguishable from *Gray* in that here there was no photograph shown to the complainant by the prosecutor. In fact, the prosecutor who interviewed the complainant testified at trial that he did not show a picture of defendant to the complainant at their meeting because it would have been inappropriate. Moreover, in *Gray*, the Court stated that it was concerned about it being difficult to determine whether the complainant's identification of the defendant was based on her memory of the incident or based on the prosecutor's suggestion that the person that hurt the complainant would be in the courtroom. *Id.*

Here, the complainant's identification of defendant was based on her memory of the incident because the prosecutor never made an improper suggestion, implication, or assertion to the complainant that defendant had committed the crime or that the case would not proceed without her positively identifying defendant as the person who committed the crimes. The police and the prosecutor did not meet with the complainant until after she had contacted the police to inform them that she could positively identify lineup participant number six, defendant, as the person who shot her and robbed the gasoline station. Then, at that meeting, the prosecutor simply asked the complainant whether she

thought that she could identify in court the person who she alleged she could identify as the perpetrator of the robbery and shooting. Therefore, we find that the trial court did not clearly err in denying defendant's motion to disqualify the prosecutor's office and his motion to exclude the in-court identification.

Defendant next argues that because he invoked his right to an attorney during his first interrogation on February 25, 2002, his waiver of that right at his March 8, 2002, interrogation was not valid and, therefore, his confession should be suppressed. On appeal from a ruling on a motion to suppress evidence of a confession, deference is given to the trial court's findings. The record is reviewed de novo, but an appellate court will not disturb the trial court's factual findings unless they are clearly erroneous. *People v Kowalski,* 230 Mich App 464, 471-472; 584 NW2d 613 (1998).

In *Miranda v Arizona,* 384 US 436, 474, 479; 86 S Ct 1602; 16 L Ed 2d 694 (1966), the Court held that a suspect in police custody must be informed specifically of his right to counsel and that the interrogation must cease if the defendant invokes that right to counsel. Defendant relies principally on *Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981), for his argument that his request for counsel on February 25 made any subsequent waiver of that right invalid. In *Edwards,* the Court held that once a suspect requests an attorney, the police cannot initiate further interrogation until the suspect has consulted with counsel. *Id.* at 490.[2]

---

[2] Thus, where the police continue an interrogation shortly after a request for counsel, an incriminating statement, if forthcoming, will usually be suppressed, but only because the police have not scrupulously honored the accused's right to cut off questioning.

A person can, however, waive his once-invoked right to counsel without an attorney. *People v Parker*, 84 Mich App 447, 453; 269 NW2d 635 (1978).[3] In *Kyger v Carlton,* 146 F3d 374, 380 (CA 6, 1998), the defendant requested an attorney during his first interrogation, but then waived those *Miranda* rights in his second interrogation ten days later. *Id.* The *Kyger* court held that *Edwards* does not apply to suspects who, like Kyger, are not in continuous custody or had received a break in custody. *Id.* The *Kyger* court reasoned that

> [t]he concern of Edwards—coercive questioning by the government that deprives a suspect of the benefits of the counsel he has requested—simply is not implicated when a suspect is not in continuous custody. [*Id.* at 381.]

Here, the second interrogation occurred eleven days after the first interrogation and there is no dispute that defendant was not in custody during this period. Under these circumstances, we reject defendant's argument that *Edwards* precludes a subsequent valid waiver of the right to counsel.[4]

---

[3] In *Parker,* the Court concluded that the prosecution did not bear its burden of proving a valid waiver of the right to counsel:

> Even accepting Officer Cline's version of the facts as true, there was less than a half-hour break in questioning after defendant requested a lawyer. Officer Cline was aware that defendant had been experiencing emotional and drug problems and had just been released from an institution. Finally, defendant testified that there was no break in interrogation at all. [*Id.* at 454-455.]

[4] In *Parker, supra,* the Court rejected the argument that *Edwards* by itself precludes a subsequent valid waiver of the right to counsel after the right to counsel is invoked:

> "[A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police

Finally, defendant argues that the trial court should have suppressed his March 8th confession because the police did not honor his request for counsel made at that time. We disagree.

Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. *Miranda, supra* at 444; *People v Abraham*, 234 Mich App 640, 644; 599 NW2d 736 (1999). The prosecutor must establish a valid waiver by a preponderance of the evidence. *Id.* at 645. The prosecutor may not use custodial statements as evidence unless he demonstrates that before questioning, the accused was warned that he had a right to remain silent, that his statements could be used against him, and that he had the right to retained or appointed counsel. *Dickerson v United States*, 530 US 428, 435; 120 S Ct 2326; 147 L Ed 2d 405 (2000).

Although defendant testified at an evidentiary hearing that he invoked his right to counsel on March 8, two police officers who interrogated defendant testified that defendant never invoked this right. And, in light of defendant's acknowledgment of his right to counsel on videotape and his signed waiver of those rights, the prosecutor established by a preponderance of the evidence that defendant waived his right to counsel. Thus, the trial court's ruling that defendant effectively waived his right to counsel was not clearly erroneous.

Affirmed.

investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." [*Parker, supra* at 452, quoting *Michigan v Mosley*, 423 US 96, 102; 96 S Ct 321; 46 L Ed 2d 313 (1975).]