*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 22, 2022

Plaintiff-Appellee,

v

No. 360386
Livingston Circuit Court
LC No. 21-026819-FC

JONATHAN DAVID TRUAX,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

Defendant is charged with seven counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), (2)(b) (sexual penetration of victim under 13 years of age by defendant 17 years of age or older), and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a), (2)(b) (sexual contact with victim under 13 years of age by defendant 17 years of age or older). He appeals as on leave granted[1] the circuit court's order denying his motion to disqualify the Livingston County Prosecutor's Office (LCPO) from prosecuting his case. We affirm.

## I. BACKGROUND

Defendant was initially represented by attorney Rolland Sizemore. But Sizemore withdrew from defendant's representation after he accepted a position as an assistant prosecuting attorney (APA) with the LCPO. Defendant's new attorney promptly filed a motion to disqualify the LCPO, arguing that Sizemore's conflict of interest should be imputed to the entire office. The circuit court conducted an evidentiary hearing.

---

[1] This Court denied defendant's initial application for leave to appeal. *People v Truax*, unpublished order of the Court of Appeals, entered May 9, 2022 (Docket No. 360386). However, the Supreme Court remanded the case to this Court for consideration as on leave granted. *People v Truax*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 164431).

Carolyn Henry, the LCPO's chief APA, testified the LCPO has a written conflict policy to ensure that a wall is implemented to screen staff members from cases where a conflict exists. When a conflict is identified, all LCPO staff members receive notice that a conflict wall has been established. The LCPO staff are directed to:

1. Exclude the screened staff member from any participation in the screened matter.

2. Refrain from discussing the matter in the presence of the screened staff member.

3. Prevent the screened staff member from viewing any documents or material relating to the screened matter.

4. Refuse to receive any confidential information from the screened staff member concerning the screened staff member.

When Sizemore was hired by the LCPO, he provided a list of cases that presented potential conflicts. Before Sizemore's first day of employment, all staff members received notice that there were conflicts on particular matters, and were instructed not to discuss the cases around him, work on the cases with him, or consult with him regarding the cases. The staff was warned that violations would result in strict and severe punishment. Sizemore received the same instructions and warnings. The conflicted cases were also omitted from staff roundtable discussions. Because all of the LCPO's files are stored electronically,[2] electronic alerts were placed in each conflicted matter to notify users that Sizemore was screened from the file. Approximately one year after Sizemore began his employment with the LCPO, additional protections were implemented that blocked conflicted attorneys from accessing the electronic files on screened matters.[3] Sizemore testified he had not communicated with anyone at the LCPO about any of his conflict cases, had not accessed any of the physical files from his former office, had not accessed any of the electronic files for the screened matters, and had no intentions of sharing any details of the screened cases. The circuit court denied defendant's motion, and this appeal followed.

## II. ANALYSIS

Defendant argues the trial court clearly erred by finding that there was not a conflict requiring disqualification of the LCPO. We disagree.

---

[2] The LCPO stores its files on a Laserfiche system. The LCPO also has access to a separate system maintained by the Prosecuting Attorneys Association of Michigan (PAAM) referred to as "adult case tracking" (ACT).

[3] Henry testified that she was initially informed by the county's information technology (IT) department that access to Laserfiche files could not be prevented. She continued to work with the IT department to be able to implement that additional protection. But PAAM was unable to implement similar measures within ACT. Accordingly, the LCPO created red color-coded notes in each of the screened files in ACT stating that a conflict exists, and identifying Sizemore as the conflicted attorney.

"[W]hether a conflict of interest exists sufficient to require disqualification of the prosecuting attorney is a question of fact that is reviewed on appeal for clear error. Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004) (citation omitted).

"The trial court should be promptly informed of a defense attorney's move to the prosecutor's office, and it should inquire into the matter and order an appropriate safeguard, such as disqualifying the individual attorney affected by the conflict of interest, or the entire prosecutor's office, if necessary." *People v Davenport*, 280 Mich App 464, 470; 760 NW2d 743 (2008) (*Davenport I*). "A presumption of prejudice exists when a defendant's former defense counsel joins the prosecutor's office that is pursuing the case against the defendant." *People v Davenport*, 483 Mich 906, 906; 762 NW2d 163 (2009) (*Davenport II*). But this presumption can be overcome "if the prosecutor shows that the attorney who has a conflict of interest was properly screened out from 'any participation in the matter.'" *Id*., quoting MRPC 1.10(b)(1). If the attorney in question "has supervisory authority over other attorneys in the office, or has policy-making authority, then recusal of the entire office is likely to be necessary." *People v Mayhew*, 236 Mich App 112, 127; 600 NW2d 370 (1999) (quotation marks and citation omitted). Other factors to consider "include the extent to which knowledge has been shared by the disqualified lawyer and the disqualified lawyer's role within the prosecutor's office." *In re Osborne*, 459 Mich 360, 369-370; 589 NW2d 763 (1999).

Before joining the LCPO, Sizemore provided the LCPO with a list of cases that presented potential conflicts. The case list was distributed to the LCPO's support staff and assistant prosecutors. Henry testified that the LCPO's staff was instructed "there was to be absolutely no discussion whatsoever of these cases within any earshot of Mr. Sizemore" and no one was to work on or consult with Sizemore regarding the cases. Pursuant to the LCPO's written conflict policy, alert notices were placed in the Laserfiche files to indicated that the files were conflict wall files, and identified Sizemore as screened from the file. Later, the LCPO implemented additional measures to block Sizemore's access to the electronic files. Sizemore testified that he did not access the files for his conflicted cases since joining the LCPO, he did not discuss those cases with any staff at the LCPO, and he has no intention of sharing any knowledge or confidence about those cases. There was no evidence in the record that the LCPO's conflict policy was not followed.

Defendant argues that the LCPO cannot overcome the presumption of prejudice because for approximately one year after Sizemore was hired, LCPO did not have a system blocking a conflicted attorney from accessing an electronic file. Defendant has failed to cite any authority mandating that access to electronic files be physically blocked, or that the LCPO's conflict procedures were inadequate.[4] Sizemore testified that he had not accessed Truax's electronic file, and defendant has failed to present evidence to refute his testimony.

---

[4] "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted). Accordingly, we need not address this issue and decline to do so.

-3-

We also are not persuaded by defendant's other arguments. He maintains that the LCPO should be disqualified because Sizemore *might* be promoted to a supervisory role before the conclusion of this matter. This argument is speculative, and it is not supported by the record. We further reject defendant's speculative assertion that Sizemore *might* have to testify at a hearing on a potential motion to quash his information. Finally, defendant complains that the prosecution did not send defendant notice of the conflict until a little over a month after Sizemore began his employment with LCPO. But defendant has not demonstrated any harm from the alleged delay. Clearly, defendant was aware of the conflict before he received the LCPO's notice because his motion to disqualify was filed two days after Sizemore began employment with the LCPO.

We conclude that the trial court did not clearly err in finding that the LCPO implemented adequate safeguards to screen Sizemore from any participation in this matter.

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ Sima G. Patel