*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* REED/FONGER, Minors.

UNPUBLISHED
May 25, 2023

No. 363382
Clinton Circuit Court
Family Division
LC No. 19-029018-NA

Before: BOONSTRA, P.J., and GADOLA and YATES, JJ.

PER CURIAM.

Respondent-mother appeals of right the order terminating her parental rights to four of her five minor children—FF, CF, WF, and ER—under MCL 712A.19b(3)(j) (reasonable likelihood of harm if child returned to parent). We affirm the trial court's termination of respondent's parental rights to her youngest child, ER, but we vacate the termination of respondent's parental rights to her three oldest children, FF, CF, and WF, and remand the case for further consideration of whether termination is in the best interests of those children.

## I. FACTUAL BACKGROUND

In May 2019, respondent divorced the father of her three oldest children, FF, CF, and WF. Respondent's ex-husband was awarded physical custody of the children; respondent was afforded parenting time on alternating weekends. During the divorce proceedings, respondent started a new relationship with a co-worker and was living with him. When respondent's divorce was finalized, respondent was pregnant with her co-worker's child.

Although respondent lived several counties away from her three oldest children, she was still exercising her parenting time with those three children. Unbeknownst to respondent, her co-worker and then-boyfriend was sexually assaulting her six-year old daughter, FF. Respondent did not believe that allegation at first, but she was forced to recognize the reality of the sexual assaults when Children's Protective Services (CPS) opened a case in August 2019. As a result, the three oldest children remained with their father as part of a safety plan. The co-worker was arrested in connection with sexual-abuse allegations, yet respondent maintained her relationship with the co-worker. This was evident from jail telephone-call records. The relationship between respondent and the co-worker did not end until he threatened respondent and their unborn child while he was

-1-

out of jail on bond. The co-worker eventually pleaded guilty to criminal sexual conduct (CSC) in the third degree for the sexual abuse of FF.

In September of 2019, respondent gave birth to JP, the child of her co-worker. During the investigative process, respondent notified CPS that, while she was giving FF a bath, she attempted to convince FF to recant her abuse story. As a result, respondent ultimately pleaded guilty to the felony offense of attempted witness tampering and served five months in jail. JP was placed with family members, and the three oldest children remained with their father with no contact permitted with respondent during that period. CPS filed a petition for termination of respondent's parental rights to all four children for failure to protect, for failure to make progress with services, and for maintaining a relationship with the co-worker after abuse allegations were made. FF, CF, and WF were dismissed from the petition because they were protected in their father's care. Respondent was offered visitation, parenting classes, and individual counseling. Because respondent originally denied that the relationship was continuing after the co-worker was in custody and respondent was caught lying about that fact, the trial court found that reasonable efforts toward reunification had not been made, but the trial court nonetheless terminated respondent's parental rights to JP. That termination, however, is not at issue in this appeal.

While the termination proceedings involving JP were still taking place, respondent struck up a friendship on social media with Richard Reed. As that relationship between respondent and Reed progressed, Reed disclosed that, in 2013, he agreed to meet with a 14-year-old girl when he was 21 under the misapprehension that she was 18 years old. The young girl showed Reed a fake identification card with an incorrect age. It was not until the young girl's father called the police that Reed found out he was romantically involved with a 14-year-old girl. Reed ultimately pleaded guilty to a CSC charge, and he is still on probation for that conviction.

One of Reed's probation requirements prohibits him from being around any minor children. When respondent learned about that, she contacted Reed's probation officer to gather information and assess whether Reed was a threat to her children and herself. Respondent believed that people can change, so she considered it unnecessary to end her relationship with Reed. Reed's probation officer deemed it unlikely that Reed would reoffend, and respondent decided that the CSC charge to which Reed pleaded guilty was different from the CSC offense that respondent's co-worker had committed against respondent's daughter, FF.

Respondent made several trips to Minnesota to visit Reed on weekends when she did not have her children. By May 2021, respondent was pregnant with Reed's child. Reed was present when respondent gave birth to their child, ER, and Reed signed an affidavit of parentage. Based upon the prior termination of respondent's rights to JP, CPS became involved to verify ER's safety with respondent. In addition to asking about FF, CF, and WF, the caseworker inquired about ER's father. Respondent initially claimed she had no information about ER's father and denied knowing his address, his telephone number, or his date of birth. Respondent also said that she had not been in contact with Reed since ER's birth. Shortly thereafter, CPS obtained a copy of the affidavit of parentage for ER that listed Reed's address and birthdate. When CPS confronted respondent with its discovery, respondent admitted that she had lied about not having Reed's contact information and that she had also lied about the nature of her relationship with Reed. Respondent claimed that Reed did not have any criminal history other than "traffic tickets." The Department of Health and Human Services (DHHS) filed a petition for removal of FF, CF, WF, and ER from respondent's

-2-

care, relying on respondent's CPS history coupled with the fact that respondent had misrepresented her relationship with Reed. The DHHS also requested termination of respondent's parental rights to her three oldest children and ER.

In January 2022, the trial court exercised jurisdiction over the four children on the basis of anticipatory neglect because of respondent's history. Respondent was offered parenting time with all four children, who had established bonds with respondent. Respondent completed all parenting classes available to her, and respondent and FF took part in individual counseling. But the DHHS nonetheless requested termination at the initial disposition hearing. The caseworker explained that the request was based on respondent's history with CPS, respondent's poor decision-making skills, and the children's ongoing need for stability after the trauma they had undergone. The caseworker stated that less than a year had passed since the termination of respondent's parental rights to JP and the same barriers still existed. The trial court noted that the case started as a mandatory petition based on respondent's previous termination of parental rights and commented that the barriers to reunification in JP's case were relationship issues, boundary setting, mental health, and deception. The trial court concluded that, under MCR 3.973, reasonable efforts to reunify the family were not required. The trial court found that a statutory ground for termination under MCL 712A.19b(3)(j) existed and that it was in all four children's best interests to terminate respondent's parental rights to each of them. Respondent then appealed.

## II. LEGAL ANALYSIS

On appeal, respondent contends that the trial court erred in three respects. First, the DHHS made no reasonable efforts to accomplish reunification. Second, the statutory basis for termination of parental rights, i.e., MCL 712A.19b(3)(j), was not established by clear and convincing evidence. Third, the trial court did not consider whether termination of parental rights was in the best interests of each of respondent's four children. We shall address these three contentions in turn.

## A. REASONABLE EFFORTS

Respondent asserts that the DHHS was required to provide reasonable efforts to reunite the family and the trial court erred in finding that the DHHS did so. Respondent further contends that because she rectified the issues that led to the termination of her parental rights to JP, the trial court could not terminate her parental rights at the initial disposition pursuant to MCL 712A.19a(2)(c). We review for clear error a trial court's finding that reasonable efforts were made to preserve and reunify a family. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). A finding is clearly erroneous when the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses. *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). Ordinarily, "[r]easonable efforts to reunify the child and family must be made in all cases absent aggravated circumstances." *In re Smith-Taylor*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 163725); slip op at 1 (quotation marks and citation omitted). But MCL 712A.19a(2)(c) provides that reasonable efforts are not necessary when a "parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights."

The conditions that prompted the termination of respondent's parental rights to JP were her consistent lying and deception, her failure to protect her children, her failure to demonstrate any

-3-

benefit from the services provided, her inability to accept responsibility for why her children were in care, and her questionable judgment in remaining in a relationship with a man who had molested her then-six-year-old child. Similarly, during this termination case, respondent lied to caseworkers about her contact with Reed and about his criminal history, failed to accept responsibility for why her children were in care, failed to understand how her poor choices affected her children, and demonstrated that she still had questionable judgment regarding her romantic relationships. As a result, reasonable efforts at reunification were not required and the trial court was permitted under MCL 712A.19a(2)(c) to terminate respondent's parental rights at the initial disposition.[1] Thus, we find no fault with the timing of the trial court's consideration of termination of parental rights as a matter of law.

## B. STATUTORY GROUNDS FOR TERMINATION

Respondent next argues that the termination of parental rights under MCL 712A.19b(3)(j) was not supported by clear and convincing evidence of any risk of future harm to the children. A trial court's finding of statutory grounds for termination is reviewed for clear error. *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). To terminate parental rights, the trial court must find one statutory ground set forth in MCL 712A.19b has been established by clear and convincing evidence. *Fried*, 266 Mich App at 540-541. Here, the trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(j), which applies when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." "Harm" under MCL 712A.19b(3)(j) includes emotional and physical harm. *Sanborn*, 337 Mich App at 272-276.

The trial court found clear and convincing evidence that there was a reasonable likelihood, based on respondent's conduct or capacity, that the children would be harmed if they were returned to respondent's care, largely because of respondent's failure to protect her children, her dishonesty with the DHHS, and her inability to place her children's interests above her personal relationships. Additionally, the trial court relied upon respondent's minimization of Reed's criminal conviction and the gravity of respondent's overall behavior. In all of those respects, the trial court's findings are not clearly erroneous. See *Sanborn*, 337 Mich App at 272-273.

Respondent's awful judgment in entering into a romantic relationship with a convicted sex offender after her previous relationship with a sex offender ended in disaster cannot be gainsaid. Respondent compounded that awful judgment by yet again attempting to deceive the DHHS about the ongoing nature of her relationship with a sex offender. Although respondent tries to distinguish her first sex-offender boyfriend's crime from her second sex-offender boyfriend's crime, we view that as a distinction without a difference. Both crimes involved child victims, and her second sex-offender boyfriend is still on probation for his crime. Moreover, respondent's decisions to remain in the two relationships even after she knew of her boyfriends' crimes leaves us with no doubt that respondent's children would face a serious risk of harm while in respondent's care. Consequently,

---

[1] Respondent argues that termination could not take place at the initial disposition because the trial court had ordered that reasonable efforts should continue. Respondent has offered no support for this assertion, so the argument has been abandoned. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

-4-

we conclude that the trial court did not clearly err in finding that a statutory ground for termination of parental rights existed.

## C. THE BEST INTERESTS OF EACH CHILD

Even though a statutory ground supported the termination of respondent's parental rights, the trial court had to determine whether termination of respondent's parental rights was in the best interests of each of the four children. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The trial court "has a duty to decide the best interests of each child individually." *Id*. Each individualized decision must be made by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review for clear error the trial court's determination regarding the children's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

In assessing the best interests of a child, the trial court may consider " 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home.' " *Id*. In addition, the trial court may weigh "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. Finally, because a child's placement with a relative militates against termination, see MCL 712A.19a(8)(a), "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *Olive/Metts*, 297 Mich App at 43. "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with [their] relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*.

We can find no clear error in the trial court's determination that termination of respondent's parental rights to her youngest child, ER, was in the child's best interests. ER was placed in foster care and neither of ER's parents was a viable alternative for placement. Respondent failed to keep her daughter, FF, safe from sexual abuse by her then-boyfriend, so the trial court could reasonably conclude that ER would not be safe from her sex-offender father, Reed, if she were in respondent's care. After all, respondent hid Reed's conviction for a sexual offense with a minor from the DHHS and she maintained a relationship with Reed after she knew about his criminal past. Accordingly, we shall affirm the termination of respondent's parental rights to her youngest child, ER.

In contrast, we must vacate the trial court's termination of respondent's parental rights to her three oldest children—FF, CF, and WF—and remand the case concerning those children to the trial court for additional consideration of whether termination is in those children's best interests. Respondent accurately notes that the three children are in a different position than ER because they are placed with their father in a safe environment. Beyond that, FF was the victim of sexual assault by respondent's first sex-offender boyfriend, so she may have unique concerns that do not affect CF and WF. Therefore, respondent contends that individualized consideration of each of the three children is imperative in this case. We agree.

Because the three oldest children are in a safe environment with their father by virtue of a judicial order that governs custody and parenting time, respondent insists that termination is not in their best interests. As we have explained, "the fact that a child is living with relatives when the

case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *Olive/Metts*, 297 Mich App at 43, citing *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). A "relative" is defined as any "individual who is at least 18 years of age and is . . . [r]elated to the child within the fifth degree by blood, marriage, or adoption," MCL 712A.13a(1)(j)(*i*), so the father of the three oldest children falls comfortably within the definition of a "relative" with whom the three children are placed.[2] In assessing whether termination was in the best interests of the three oldest children, the trial court made no mention of their placement in the care of a relative, i.e., the children's father. "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interests determination and requires reversal." *Olive/Metts*, 297 Mich App at 43. Accordingly, we must vacate the trial court's finding that termination was in the best interests of the three children and remand the case for further consideration of that issue. On remand, the trial court must afford individualized consideration to the best interests of each of the three oldest children. See *id.* at 42.

Affirmed in part, vacated in part, and remanded for additional proceedings consistent with this opinion. We retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Christopher P. Yates

---

[2] Curiously, we once held that "MCL 712A.13a(1)(j) defines 'relative,' and biological mother is not included in the definition[,]" so a child's "biological mother was not a 'relative' for purposes of . . . relative placement." *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016). Since we made that observation, however, our Legislature has amended MCL 712A.13a(1)(j) to define a "relative" in straightforward language that simply refers to a "relative" as any adult "[r]elated to the child within the fifth degree by blood, marriage, or adoption." See 2022 PA 200. Based upon that amendment, our exclusion of a biological parent from the status of a "relative" under Michigan law is no longer sustainable.

# Court of Appeals, State of Michigan

# ORDER

In re REED/FONGER, Minors

Docket No. 363382

LC No. 19-029018-NA

Mark T. Boonstra
Presiding Judge

Michael F. Gadola

Christopher P. Yates
Judges

For the reasons detailed in the opinion issued concurrently with this order, this Court VACATES the trial court's finding, as reflected in its September 22, 2022 order terminating respondent's parental rights, that termination was in the best interests of FF, CF, and WF, and REMANDS this matter to the Family Division of the Clinton Circuit Court for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 42 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the trial court shall give further consideration to whether termination is in the best interests of FF, CF, and WF, and shall explicitly address whether termination is appropriate in light of the children's placement with relatives and shall afford individualized consideration to the best interests of each of those three children. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

May 25, 2023
Date

Chief Clerk