*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CCHJ, Minors.

UNPUBLISHED
March 13, 2026
10:51 AM

No. 372874
Wayne Circuit Court
Family Division
LC No. 2015-518727-NA

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order assuming temporary jurisdiction over her minor children KC, KCC, DC, TH, TJ, and TLJ under MCL 712A.2(b)(1) (subject to substantial risk of harm) and (2) (unfit home or environment by reason of neglect). We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Respondent previously appealed the trial court's decision to remove her children from her care and custody under MCL 712A.13a(9) and MCR 3.965(C)(2) following a preliminary hearing. *In re CCHJ Minors*, unpublished per curiam opinion of the Court of Appeals, issued July 6, 2024 (Docket No. 368318). We previously summarized the factual basis underlying this appeal:

Respondent is the mother of KC, KCC, DC, TH, TJ, and TLJ. TGH is the biological father of TJ, TLJ, and TH and was a respondent in the petition. DMC is the biological father of KC and KCC and was also a respondent in the petition. DRC is the biological father of DC and was not a respondent in the petition.

The trial court first acquired jurisdiction over TJ, TLJ, and TH (the only children respondent had at that time) after the Department of Health and Human Services (DHHS) filed a petition for temporary wardship in 2015. The petition alleged that respondent, TJ, TLJ, and TH were residing in a home without any legal right or permission to reside in the home, the home was without working electricity or a working furnace, respondent was provided services to rectify the unsuitable living conditions but failed to do so, and two previous Child Protective Services

-1-

(CPS) investigations substantiated physical abuse allegations against respondent. The trial court found reasonable cause to believe that the immediate removal of TJ, TLJ, and TH from respondent's care was necessary to protect the children's safety and welfare. Respondent was ordered to complete parenting classes, individual therapy, and a psychological evaluation, and to obtain and maintain suitable housing and income. Respondent completed the services and the trial court returned TJ, TLJ, and TH to respondent's care and terminated the court's jurisdiction in January 2016.

In August 2023, petitioner filed a petition for child protective proceedings requesting that the trial court take jurisdiction over TJ, TLJ, TH, KC, KCC, and DC under MCL 712A.2(b)(1) and (2). The petition alleged, among other things, that CPS had received a referral of improper supervision but respondent refused to allow CPS to enter her home to assess its suitability for the children. CPS observed the children to be dirty and unkempt. Respondent was neglecting TH's mental health needs by failing to ensure he received his necessary medications. The petition alleged that on May 30, 2023, respondent called police and asked them "to take [TH] before she kills him, or he kills her." When police arrived, respondent "was holding a knife and threatened to stab [TH] if he came close to her." The responding officers noted the home was "filthy" and saw a young child running through the home naked. Two days later, police were again summoned to the home. TH refused to go inside out of fear of being physically abused by respondent. TH also reported that respondent deprived him of food. Further, respondent's home lacked working electricity, petitioner attempted to provide services to respondent but respondent was uncooperative, and respondent failed to benefit from prior services. Following a preliminary hearing, the trial court found that petitioner made reasonable efforts to prevent the removal of respondent's children from her care and that it was contrary to the welfare of the children to remain in respondent's care. The trial court ordered the removal of the children from respondent's care and placed the children in the care of the DHHS, except DC, who was placed with his nonrespondent father. [*In re CCHJ*, unpub op at 1-2.]

We affirmed the trial court's order removing respondent's children from her care by holding that "the trial court made the requisite factual findings to order removal of the children under MCL 712A.13a(9) and MCR 3.965(C)(2) and did not clearly err by ordering the removal of respondent's children from her care." *In re CCHJ*, unpub op at 5-6.

Since that appeal, respondent began her adjudication trial. On May 30, 2023, respondent refused to allow 12-year-old TLJ back into the home because TLJ violated curfew. A CPS worker and Detroit Police Officers responded to the scene. After speaking with the CPS worker, respondent allowed TLJ to return home, but did not allow CPS to enter the home. The CPS worker observed that eight-year-old TH, who had ADHD and behavioral issues, "didn't look like he had a bath that day" and was "playing in dirt." Respondent told the police officer that TH broke several windows in the family's home, sprayed water from a garden hose inside the home and damaged the neighbor's property. She requested that CPS and the Detroit Police take TH from her home because she could not take care of him, and the police officer needed to remove TH before he killed respondent, or she killed him. The CPS worker also observed KC and KCC "looked like

-2-

they were not well kept." The CPS worker interviewed TLJ, TH, KC, and KCC on May 30 and those interviews revealed the children did not have beds to sleep in, and they were inconsistently fed. Respondent did not allow CPS to conduct a home assessment.

On June 1, 2023, respondent was arrested for child neglect because TH was outside of the home and across the street at 1:00 a.m., and was refusing to return home because, according to TH, his mother would beat him or hurt him if he returned. TH required medication for his ADHD and behavioral issues, was refusing to take his medication, and respondent did not make TH take his medication. TH had been wearing the same clothes for multiple days, had a bad odor, and said he was eating food from a food truck and sleeping on the floor, not in a bed. Respondent refused to allow CPS into her home that night and "turned her back to" Detroit Police when they tried to intervene and allow TH back into the home. Respondent was taken to the Detroit Detention Center and later released.

On June 9, 2023, CPS tried to conduct another home assessment to ensure the children's needs were being met, but respondent again refused entry. On June 28, 2023, respondent called CPS to inform them that she could no longer take care of the children and would be dropping them off at a CPS office but never came. In July 2023, CPS had two meetings with respondent to create a safety plan for the children to live outside of respondent's home and with family to ensure their needs were being met. Both meetings ended without a safety plan in place. After the second meeting, a petition to remove the children was filed, and the children were removed from respondent's care. CPS was concerned respondent also had untreated mental health issues, would not compel TH to take his medication, and that without court intervention, there was a risk of harm if the children were returned to respondent's care. Respondent also told TH and TLJ that if they testified at her adjudication trial, "they would not be able to be returned back to her."

On the second day of trial, petitioner informed the trial court that respondent was willing to enter a no-contest plea to jurisdiction under MCL 712A.2(b)(1) and/or (2), and all parties agreed to use the jury trial record up to that point to support the plea. Respondent was placed under oath and understood that she waived her right to have the trial continue to its conclusion. Respondent acknowledged that she was represented by counsel, had asked her counsel all of her questions, and had no remaining questions for her counsel. Respondent stated that she was not threatened or promised anything in exchange for entering her plea. Respondent waived her right to have petitioner prove the allegations in the petition by a preponderance of the evidence. Respondent acknowledged that she was waiving her right to cross-examine witnesses and to call or subpoena her own witnesses. The trial court informed respondent that her plea could later be used in termination proceedings, that she could appeal the trial court's decisions, and that she would be precluded from appealing the trial court's jurisdiction over her children from an order terminating her parental rights. The parties agreed on the record that respondent voluntarily, knowingly, and understandingly waived her continuation of her jury trial. Respondent's attorney expressed satisfaction with the plea colloquy and a no-contest plea was entered.

The trial court took judicial notice of everything placed on the record up to the point of respondent's no-contest plea, then found that the record established under MCL 712A.2b(1) that the children were "subject to a substantial risk of harm to their mental wellbeing." Regarding § 2(b)(1), the trial court stated:

For each of the children, they were living in a home with mom. That home, we've heard that—no one was ever able to assess it, so we don't really know the exact circumstances inside of mom's home, but we do know that the children were seen and observed to be unkept, unclean, having a bad odor, in [TH]'s case, clothing being dirty, and that at least some of the children stated that they had been hungry at different times, which would indicate that mom just didn't have the necessary resources to fully provide for the children.

\* \* \*

The second thing that is established on this record is that, based upon the things that did come in about the children, that they were without proper custody with mom . . . . And so, at this point, the [c]ourt would find that all six of the children were without proper custody. Two of the children were misbehaving, clowning, quite frankly, giving mom the worst time. And, you know, that's [TH] and [TLJ]. They were out all hours, and left mom with a horrible choice. Does she leave the four other children and go try to track them down in the park and leave these others by themselves to find the two? . . . [F]or this record, it is clear that they, all six, were without proper custody.

The trial court also found that the record established under MCL 712A.2b(2) that, by reason of neglect, respondent's home was an unfit place for all of the children to live. Respondent's attorney expressed satisfaction with the trial court's compliance with the relevant statutory provisions.

The trial court also approved petitioner's treatment plan for respondent, which required respondent to obtain and maintain suitable housing and a legal source of income, participate in visitation, undergo psychological and psychiatric evaluations, attend parenting classes, and attend individual and family counseling. The trial court assigned respondent a parent partner to mentor her through her treatment. Respondent now appeals the trial court's order assuming jurisdiction over all six children, arguing her plea was not knowingly and intelligently made because she was not advised that she was pleading no-contest to the allegations against her that came out during the jury trial, specifically that she did not know which facts were being used against her as the factual basis of her plea. This appeal followed.

## II. RESPONDENT'S NO-CONTEST PLEA WAS KNOWING AND INTELLIGENT

### A. STANDARDS OF REVIEW

We review the trial court's finding of facts underlying its decision to exercise jurisdiction for clear error. *In re S R*, 229 Mich App 310, 314; 581 NW2d 291 (1998). "Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law, which we review de novo." *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014). Because respondent did not move to withdraw her plea in the trial court, the issue is unpreserved, which limits our review to plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750,

763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

## B. FACTUAL BASIS FOR PLEA

Within respondent's due process argument is an assertion that the trial court did not specify which facts from the trial thus far were being used as the basis for her no-contest plea. Jurisdiction must be established by a preponderance of the evidence. MCR 5.972(C)(1); *Ryan v Ryan*, 260 Mich App 315, 342; 677 NW2d 899 (2004). Jurisdiction is proper under MCL 712A.2(b)(1) and (2) under the following circumstances:

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.
>
> \*   \*   \*
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

Having reviewed the adjudication trial transcript, we observe that no specific factual allegations were brought to light about TJ and DC's wellbeing, and the record only contained information that KCC and KC "looked like they were not well kept." The testimony that evidenced neglect only pertained to TLJ and TH.

We nevertheless agree with trial court's finding that jurisdiction was proper under MCL 712A.2b(1). The trial court can assume jurisdiction over all children under MCL 712A.2b(1) and (2) where there was only factual evidence of neglect of one child by relying on doctrine of anticipatory neglect: how a parent treats one child is probative of how that parent treats other children. See *In re BZ*, 264 Mich App 286, 295-296; 690 NW2d 505 (2004); and *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). Here, the trial court made no direct reference to the doctrine of anticipatory neglect, but we agree that respondent's failure to supervise TLJ and TH amounts to neglect under MCL 712A.2b(1), and that this is probative of how respondent treats TJ, KC, KCC, and DC. Because the testimony established the children were without beds to sleep in and without food, the trial court was correct to find jurisdiction was proper as to all of the children under MCL 712A.2b(2).

## C. NO-CONTEST PLEA

Respondent argues on appeal that her no-contest plea granting the trial court jurisdiction over her children under MCL 712A.2(b)(1) and (2) must be withdrawn because it was not knowingly and intelligently made, in violation of her due-process rights. We disagree.

The juvenile code, MCL 712A.1 *et seq.*, sets forth the procedures that must occur before the state can "exercise its *parens patriae* authority over minors." *In re Sanders*, 495 Mich at 404. "In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *Id.* The adjudication phase protects parents from being erroneously deprived of their parental rights and "divests the parent of her constitutional right to parent her child and gives the state that authority instead." *In re Ferranti*, 504 Mich 1, 16; 934 NW2d 610 (2019). After adjudication occurs and the trial court has jurisdiction over a child, the case enters the dispositional phase, during which "the trial court has broad authority to enter orders that are appropriate for the welfare of the juvenile and society in view of the facts proven and ascertained." *Id.* (quotation marks and citation omitted).

Under MCR 3.971(A), "[a] respondent may make a plea of admission or of no contest to the original allegations in the petition," in lieu of an adjudication trial. However, before accepting a jurisdictional no-contest plea, the trial court must be satisfied "that the plea is knowingly, understandingly, and voluntarily made." MCR 3.971(D)(1). Moreover, under MCR 3.971(D)(2), "[t]he court shall not accept a plea of admission or of no contest without establishing support for a finding that one or more of the statutory grounds alleged in the petition are true . . . ." When a no-contest plea is entered, "the court shall not question the respondent, but, by some other means, shall obtain support for a finding that one or more of the statutory grounds alleged in the petition are true." *Id.*

Here, we disagree with respondent's claim that her no-contest plea was not knowingly and intelligently entered. Respondent argues that the plea procedure violated her due-process rights because she was misinformed about what her no-contest plea would entail, and she did not understand the implications of using the trial record as a factual basis to support her plea. However, respondent failed to explain how she was misinformed during the plea process. Failing to properly brief an issue on appeal renders an issue abandoned. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Despite respondent's claim, the record shows that each party, including respondent, agreed to use the trial record to support respondent's plea. We have reviewed the entire transcript of respondent's plea and find no indication that she was confused or misinformed about the rights she was waiving. Respondent agreed that she understood that she was waiving her right to have the jury trial completed, which would have allowed her to cross-examine witnesses and have witnesses subpoenaed and require petitioner to prove its case by a preponderance of the evidence. The record also indicates that the relevant portions of the petition were read into the record. Respondent spoke with her counsel before entering the plea and was aware that her plea could be used at a termination hearing.

On appeal, respondent has provided no evidence, such as an affidavit, to defeat her sworn testimony and to explain her confusion during the plea process. Instead, she argues she did not understand her plea. Respondent's argument is not evidence, and thus, the record reveals only that

respondent, while under oath, swore that she understood her plea and everything it entailed. In other words, she has not proven any error, plain or otherwise, to warrant reversal in this case.

Because this issue is unpreserved, respondent "bears the burden of persuasion with respect to prejudice." *In re MJC*, 349 Mich App 42, 48; 27 NW3d 122 (2023). Respondent never asserted on appeal that she would have rejected a no-contest plea had she been properly informed nor has she presented any evidence of such. Thus, even if respondent could establish that she was confused or misled during the plea process, she has not demonstrated how these issues affected the outcome of the proceedings, causing prejudice. Because she has not met her burden of persuasion related to prejudice, this argument on appeal must fail. *Id*. Accordingly, there is no basis to reverse and remand for respondent to withdraw her no-contest plea.

Affirmed.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young